UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
Waco Division

| | |
|---|---|
| BEL POWER SOLUTIONS INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MONOLITHIC POWER SYSTEMS, INC., <br><br> *Defendant*. | Civil Action No. 6:21-cv-655 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Bel Power Solutions Inc., ("Bel Power"), through its counsel, brings this Complaint against Monolithic Power Systems, Inc. ("MPS") for the infringement of U.S. Patent Nos. 6,936,999, 6,949,916, 7,000,125, 7,049,798, 7,080,265, and 7,456,617 (collectively, the "Patents-in-Suit") and alleges as follows.

## THE PARTIES

1.     Plaintiff Bel Power is a corporation organized under the laws of the state of Delaware, having a place of business at 2390 Walsh Avenue, Santa Clara, California 95051.  Bel Power is a wholly owned subsidiary of Bel Fuse Inc. ("Bel Fuse"), which is a corporation organized under the laws of the State of New Jersey with its principal place of business located at 206 Van Vorst St., Jersey City, New Jersey 07302. Bel Fuse is a publicly traded corporation that

designs, manufactures, and markets a broad set of products that power, protect, and connect electronic circuits.

2.      Upon information and belief, Defendant MPS is a corporation organized under the laws of the State of Delaware having multiple regular and established places of business, with employees and offices located across the United States.

3.      Many of the likely infringing activities of MPS are conducted confidentially.  A reasonable opportunity for discovery will likely yield additional evidence of infringement of the Patents-in-Suit both in this judicial district and throughout the country.  The allegations herein are based on evidence located after reasonable searches of publicly available information.

## JURISDICTION AND VENUE

4.      This is a civil action that includes claims for damages and injunctive relief under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, including but not limited to 35 U.S.C. § 271, for the infringement of the Patents-in-Suit by MPS.

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      General personal jurisdiction over MPS is proper in this District because, upon information and belief, MPS has engaged in systematic and continuous business activities in Texas.

7.      Upon information and belief and subject to a reasonable opportunity for discovery, MPS has committed, aided, abetted, contributed to, and induced infringement of the Patents-in-Suit across the United States and specifically within this District.  Upon information and belief,

MPS derives substantial revenue from its sale of power modules that infringe one or more apparatus claims of the Patents-in-Suit and are specifically designed to be used in a manner that infringes one or more of the system and method claims of the Patents-in-Suit ("Infringing Products") sold in Texas through its extensive network of distributors in the state and this District. Upon information and belief, MPS has sold, is selling and offers to sell Infringing Products across the entirety of Texas and specifically in this District through one or more authorized resellers including but not limited to: Mouser Electronics, located in Mansfield, Texas; WPG Americas, located in Allen, Texas; Future Electronics, located in Austin, Texas; Future Electronics, located in Dallas, Texas; Future Electronics, located in El Paso, Texas; Avnet, Inc. located in Austin, Texas; Avnet, Inc., located in Dallas, Texas; Avnet, Inc., located in Houston, Texas.

8.     MPS's systematic and continuous business activities in Texas and this District include employing at least four individuals in this District: Jason Bone, located in Hutto, Texas; Roberto "G.," located in Austin, Texas; Sam Robinson, located in Austin, Texas; and Victor Gallagher, located in Austin, Texas. MPS also employs two individuals elsewhere in Texas: Dan Tanoury, located in Plano, Texas; Frank Xi, located in Plano, Texas. Upon information and belief, many of these employees reside in Texas, including this District, primarily to serve end users or sell and offer to sell Infringing Products to customers in this District, and MPS specifically intends to hire employees located in Texas generally and this District specifically to carry out the business of MPS including the aforementioned infringing activities. Upon information and belief, MPS's systematic business ties to Texas and this District are so integral and systematic that the company is currently hiring a Senior Application Engineer to provide onsite support of local, key customers who purchase Infringing Products located in Austin and the surrounding areas in this District.

9.     Additionally, this Court has specific jurisdiction over MPS because the company purposefully directed its infringing activities at Texans in this District via its aforementioned distributors and employees in this state; this suit's claim arises out of the direct, induced, and contributory infringement of the Patents-in-Suit as a result of MPS's infringing activity in Texas, including the sale and offer for sale of its Infringing Products  in Texas; and asserting personal jurisdiction against an infringer with such strong ties to the jurisdiction is manifestly reasonable and fair.

10.     MPS directly infringes at least one or more of the claims of each of the Patents-in-Suit through its sale, offer for sale, and/or use of its Infringing Products throughout the United States and also in this District. For example, MPS commits acts of direct infringement when it sells and offers for sale its Infringing Products through MPS's website. By accessing this website, residents and entities throughout the Unites States and this District can learn about and download information on MPS's Infringing Products. MPS's website also allows consumers in this District to buy the Infringing Products directly from MPS and includes detailed pricing information. The website includes a shopping cart feature that, upon information and belief, allows residents and entities in this District to customize their order and then purchase Infringing Products directly from MPS and have the Infringing Products shipped to locations within this District. And even if a resident or entity within this District does not use the ordering process described above, MPS's website includes links that allow users in this District to discuss the Infringing Products with an MPS engineer or get a quote to make a direct purchase in this District after further direct contact with MPS sales personnel.

11.     MPS further commits acts of direct infringement when it uses its Infringing Products in a manner that infringes at least one or more claims of each of the Patents-in-Suit as

4

alleged herein and further described in the representative claim charts (Exhibits G – L) incorporated into this pleading. For example, MPS uses its products at in-person and virtual tradeshows in the United States and available in this District to demonstrate to its customers and potential customers how the Infringing Products can be used in a manner that infringes the Patents-in-Suit. Moreover, MPS commits acts of direct infringement when it tests its Infringing Products in a manner that infringes the Patents-in-Suit. MPS operates one or more testing laboratories where its employees use the Infringing Products in a manner that infringes the Patents-in-Suit. MPS further sells and offers for sale these infringing services to its customers in the United States and this District for the purposes of designing and implementing systems and methods that use the Infringing Products in a manner that infringes at least one or more claims of each of the Patents-in-Suit. MPS maintains testing reports from these laboratories on its website, where they are used to sell and offer to sell the Infringing Products to customers in the United States and this District. Further, MPS works closely with its customers, collaborating with them to jointly create Infringing Products that infringe the asserted method claims of the Patents-in-Suit, for example by designing and configuring devices sold by MPS into Infringing Products that perform the asserted method claims of the Patents-in-Suit.

12.     MPS committed—and continues to commit—acts of indirect infringement in this District by inducing its customers, distributors, and resellers to use its Infringing Products in a manner that infringes at least one or more of the claims of each of the Patents-in-Suit as alleged herein and further described in the representative claim charts (Exhibits G – L) incorporated into this pleading. For example, MPS makes available on its website one or more design tools that direct customers in the United States and this District to use the Infringing Products in a manner that infringes one or more claims of the Patents-in-Suit Patent. *See*, *e.g.*,

5

https://www.monolithicpower.com/en/design-tools/design-tools.html (last accessed on June 16, 2021). MPS further offers technical support to customers in the United States and this District directing its customers to use its Infringing Products in a manner that infringes one or more claims of each of the Patents-in-Suit. The technical support provided by MPS includes, but is not limited to, MPS's Technical Forum (*see*, *e.g.*, https://forum.monolithicpower.com/ (last accessed on June 17, 2021), its MPS NOW customer support solution (*see*, *e.g.*, https://www.monolithicpower.com/en/support/mps-now.html (last accessed on June 17, 2021)), configuration, programming, and monitoring software (*see*, *e.g.*, https://www.monolithicpower.com/en/virtual-bench-pro-3-0.html and https://www.monolithicpower.com/en/virtual-bench-pro-4-0.html (last accessed June 16, 2021)), product webinars (*see*, *e.g.*, https://www.monolithicpower.com/en/support/webinars.html (last accessed June 16, 2021)), design simulation tools (*see*, *e.g.*, https://www.monolithicpower.com/en/design-tools/design-tools.html (last accessed June 16, 2021)), partnering opportunities (*see*, *e.g.*, https://www.monolithicpower.com/en/applications/accelerator-cards.html (last accessed June 16, 2021)), and partner reference designs (*see*, *e.g.*, https://www.monolithicpower.com/design-tools/reference-design-partners.html (last accessed June 16, 2021)), which direct and assist customers on how to use the Infringing Products in a manner that infringes one or more claims of each of the Patents-in-Suit.  As just one non-limiting example, MPS provides a Stratix-10 Reference Design, which specifically includes the use of MPM3695 with a Stratix-10 to provide power solutions, wherein the Stratix-10 includes a controller that interfaces with MPM3695 through a Power Management Bus in a manner that infringes one or more claims of the Patents-in-Suit. MPS further maintains a YouTube channel that instructs its customers how to use the

Infringing Products in a manner that infringes one or more claims of the Patents-in-Suit, including a specific channel dedicated to its Infringing Products (*see*, *e.g.*, https://www.youtube.com/c/MonolithicPowerSystems and https://www.youtube.com/playlist?list=PLADWxxBMy8Ck7mV4cofsyufCdJIRKUFTi). Similarly, MPS offers and provides evaluation kits, *e.g.*, EVKT-MPM3695-25-A, which encourage its customers to design, implement and test its Infringing Products in a manner that infringe the Patents-in-Suit.

13.      MPS also committed—and continues to commit—acts of indirect infringement in this District by offering to sell, selling and distributing its Infringing Products for use in practicing at least one or more of the claims of each of the Patents-in-Suit. As set out in the documents, videos, informational and instructional materials offered on MPS's website and as further described in the representative claim charts (Exhibits G – L) incorporated into this pleading, the Infringing Products are used to practice the claimed inventions in each of Patents-in-Suit, are a material part of those claimed inventions, MPS knows that its Infringing Products are especially made or especially adapted for use in an infringement of Patents-in-Suit, and that the Infringing Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.

14.      MPS purposefully availed itself of the rights and protections of the laws of the State of Texas through its current use of the courts in Texas, including in this District. For example, on September 25, 2020, MPS sued Meraki Integrated Circuit (Shenzhen) Technology, Ltd., a Chinese firm, and Promate Electronic Co., Ltd., a Taiwanese corporation, for patent infringement and other claims in the Waco Division of the Western District of Texas (6:20-cv-00876). Upon information and belief, this suit is ongoing.  MPS availed itself of the courts in this jurisdiction and this District

purposefully over other Districts where it could have initiated its lawsuit against foreign corporation defendants, such as Meraki and Promate.

15.     It cannot be burdensome or against the traditional notions of fair play and substantial justice for MPS to litigate a patent infringement case in this District because it is *already* litigating a patent infringement case here. MPS intentionally chose to subject itself to this District on its own accord and is currently opposing a request that the Meraki case be transferred out of this District. MPS has proven able to navigate the courts in this District and defend its interests here. Ultimately, Texas and this District have a substantial interest in adjudicating a dispute regarding acts of infringement committed in this District, including acts committed by employees and distributors located in this District. These interests are substantial and strongly outweigh any conceivable litigation burden to MPS, making the exercise of jurisdiction reasonable and fair.

16.     In sum, this Court has personal jurisdiction over MPS due to its continuous and systematic contacts in the State of Texas and this District, including, but not limited to, its employees and distributors located in this District and its commission of acts of patent infringement specifically directed at residents and entities of Texas and this District. These facts, coupled with the contemporaneous litigation brought by MPS in this exact District supports a finding that personal jurisdiction exists over MPS in this District, consistent with all Constitutional limits.

17.     Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1400(b) because MPS has a regular and established place of business within this District and commits acts of infringement in this District.

18.     In addition, MPS has at least one physical place of business in this District. It employs at least four employees— Jason Bone, located in Hutto, Texas; Roberto "G.," located in Austin, Texas; Sam Robinson, located in Austin, Texas; Victor Gallagher, located in Austin, Texas—who, subject to a reasonable opportunity for discovery, either work together at physical office within this District or work from remote offices of MPS in their homes or other locations in this District, at the request, direction and benefit of MPS. Even if these employees work from their homes, these constitute a physical place for MPS within this District because, subject to reasonable opportunity for discovery, these employees have MPS-owned computer systems that contain knowledge of the Infringing Products, MPS literature about the Infringing Products, MPS documents about the Infringing Products, and MPS power modules including the Infringing Products and other MPS products that substantiate these places as conducting MPS business including infringement of the Patents-in-Suit and because these employees have MPS home offices in this district. Subject to a reasonable opportunity for discovery, some employees have received knowledge, information, training, direction and proprietary tools from MPS that enable them to operate onsite with customers in this District and have MPS-owned promotional materials that enable them to engage in sales activities in this District as well as inventory including but not limited to samples or other operational Infringing Products.  Further, on information and belief, the employees of MPS in this district have specialized knowledge of the infringement of the Patents-in-Suit including but not limited to unique knowledge about how MPS, through these employees sells Infringing Products and induces and contributes to the infringement of the Patents-in-Suit.  More specifically, on information and belief, these employees have specific knowledge and information regarding MPS's intent to sell its Infringing Products, including testing,

9

instructing, and supporting its customers in this District to utilize the Infringing Products to in a manner that infringes the Patents-in-Suit.

19.     Additionally, upon information and belief, MPS stores Infringing Products at one or more authorized resellers within this District: Future Electronics, located in Austin, Texas; Future Electronics, located in El Paso, Texas; and Avnet, Inc., located in Austin, Texas. Subject to a reasonable opportunity for discovery, MPS's Infringing Products occupy physical storage and retail space with these distributors before being sold to their final customer, an additional form of a physical place in this District.

20.     Second, MPS's operation in this District is regular, steady, and uniform—not sporadic. Upon information and belief, employees hired by MPS have worked for MPS for years in this District, include one employee here who has worked for MPS for over six years. Nothing about the employees, the attempt to hire a new employee specifically for this District, and the business relationships with its distributors suggests that MPS is doing business on a temporary basis in this District.

21.     Third, this District is the "place" of MPS. The company's at least four employees, upon information and belief and subject to a reasonable opportunity for discovery, are purposely kept in this District by MPS in order to serve and sell to customers of MPS in this District including engaging in infringing activity in relation to the Patents-in-Suit. As mentioned previously, MPS's active hiring of a Senior Engineer in Austin to help with onsite troubleshooting for key customers in this District underscores the point that this District is the place of MPS as employer and that the representatives of MPS in this district have specific and unique knowledge about sale of Infringing Products including but not limited to the induced and contributory infringement of MPS in this

district as they have unique knowledge about how MPS power modules such as point of load regulators are being incorporated into power control systems that directly infringe certain claims of the Patents-in-Suit. This District is not merely the place where MPS's employees live, but the place where MPS needs and intends them to be to have substantive, continuous, on-the-ground operations for its customers here, including but not limited to operations that constitute infringement of the Patents-in-Suit.  The operations include but are not limited to effectively having MPS offices in the homes of the employees residing in this district.

22.     Venue is also proper because, as set forth in detail below and the accompanying Exhibits, MPS commits acts of infringement in this District. MPS directly and indirectly infringes at least one or more of the claims of each of the Patents-in-Suit through its sale, offer for sale, distribution, and/or use of Infringing Products including but not limited to certain of its power solutions power modules in this District.

23.     As set forth above, MPS committed—and continues to commit—acts of direct and indirect infringement in this District through its sale and offering for sale of the Infringing Products through its website, including providing informational and instructional materials to its customers in this District. *See*, *e.g.*, *supra* ¶¶ 10–13.

## FACTUAL BACKGROUND

The Patents-in-Suit

24.     U.S. Patent No. 6,936,999 (the "'999 Patent"), entitled "System and Method for Controlling Output-Timing Parameters of Power Converters," was duly and legally issued on August 30, 2005, by the United States Patent and Trademark Office. Bel Power Solutions Inc.

owns the '999 Patent. A true and correct copy of the '999 Patent is appended hereto as Exhibit A and incorporated herein by reference.

25.     U.S. Patent No. 6,949,916 (the "'916 Patent"), entitled "System and Method for Controlling a Point-of-load Regulator," was duly and legally issued on September 27, 2005, by the United States Patent and Trademark Office. Bel Power Solutions Inc. owns the '916 Patent. A true and correct copy of the '916 Patent is appended hereto as Exhibit B and incorporated herein by reference.

26.     U.S. Patent No 7,000,125 (the "'125 Patent"), entitled "Method and System for Controlling and Monitoring an Array of Point-of-load Regulators," was duly and legally issued on February 14, 2006, by the United States Patent and Trademark Office. Bel Power Solutions Inc. owns the '125 Patent. A true and correct copy of the '125 Patent is appended hereto as Exhibit C and incorporated herein by reference.

27.     U.S. Patent No 7,049,798 (the "'798 Patent") entitled "System and Method for Communicating with a Voltage Regulator," was duly and legally issued on May 23, 2006, by the United States Patent and Trademark Office. Bel Power Solutions Inc. owns the '798 Patent. A true and correct copy of the '798 Patent is appended hereto as Exhibit D and incorporated herein by reference.

28.     U.S. Patent No 7,080,265 (the "'265 Patent"), entitled "Voltage Set Point Control Scheme," was duly and legally issued on July 18, 2006, by the United States Patent and Trademark Office. Bel Power Solutions Inc. owns the '265 Patent. A true and correct copy of the '265 Patent is appended hereto as Exhibit E and incorporated herein by reference.

29.     U.S. Patent No 7,456,617 (the "'617 Patent"), entitled "System for Controlling and Monitoring an Array of Point-of-Load Regulators by a Host," was duly and legally issued on November 25, 2008, by the United States Patent and Trademark Office. Bel Power Solutions Inc. owns the '617 Patent. A true and correct copy of the '617 Patent is appended hereto as Exhibit F and incorporated herein by reference.

30.     The Patents-in-Suit are directed toward systems, methods and articles of manufacture that provide a substantial improvement in power control for circuits, including novel and unique point-of-load regulators. Electronic systems and devices frequently have a single voltage input but require several discrete voltages and/or current levels for individual circuits included within the system.  For example, some electronic devices only include a 120V AC input, but require different direct current voltages for circuits contained therein.  A potential solution to this problem is to employ a distributed power architecture in which a single power supply is used to distribute power throughout the system and individual Point-of-Load ("POL") regulators are placed near each internal circuit to convert the supplied power into the form required by the internal circuit. In such distributed power architectures, a power supply controller typically operates in conjunction with each POL regulator, *e.g.*, to activate, program, control, and/or monitor its operation.

31.     The Patents-in-Suit form a family of patents that are directed toward improvements to such distributed power systems. Broadly speaking, these improvements sought to offload some of the logic traditionally performed by the power supply controller to a "smart" POL regulator. The power supply controller is still able to maintain direction over the operation of the POL regulator by communicating with the POL regulator over a bi-directional serial data bus, with the

POL regulator being responsible for taking action.  By offloading the logic to the "smart" POL regulator, the claimed features of the Patents-in-Suit yield a significantly improved design.

32.     The substantial technological improvements embodied by the claims of the Patents-in-Suit and related disclosures have been well recognized by the industry and subject to substantial industry praise.

33.     The Patents-in-Suit are universally respected, and were acquired by Bel Power as part of a 2014 transaction.  Most of the significant module and semiconductor manufacturers have recognized the strength of the Patents-in-Suit and taken licenses.  Licensees to the Patents-in-Suit include, but are not limited to, Texas Instruments, Emerson, Infineon, Microchip, Intersil, Maxim/Volterra, and Lineage/GE.

34.     Certain claims of the Patents-in-Suit have been successfully litigated such that they were found infringed and valid by a jury, with that holding affirmed by the United States Court of Appeals for the Federal Circuit.  *See Power-One Inc. v. Artesyn Technologies, Inc.*, 599 F.3d 1343 (Fed. Cir. 2010).

35.     On August 13, 2015, Bel Power provided notice to MPS regarding Bel Power's patent portfolio including the Patents-in-Suit.  MPS disregarded this notice, did not respond, and continued its practices.

36.     On December 6, 2018, Bel Power again provided notice to MPS regarding Bel Power's patent portfolio including the Patents-in-Suit.  MPS disregarded this notice, did not respond, and continued its practices.

37.     On January 21, 2021, Bel Power again provided notice to MPS regarding Bel Power's patent portfolio including the Patents-in-Suit.  MPS disregarded this notice, did not respond, and continued its practices.

38.     At all relevant times, MPS has been aware of the Patents-in-Suit and its infringement.  MPS had notice, and Bel Power provided notice, of MPS's infringement of the Patents-in-Suit at all relevant times and at least since August 2015.  MPS's infringement of the Patents-in-Suit is willful and wanton.

MPS's Infringing Activities and Products

39.     As previously mentioned, significant portions of MPS likely infringing sales and other infringing practices in relation to the Patent-in-Suit is not publicly available.  The following allegations are based on a reasonable investigation based on publicly available information.  A reasonable opportunity for discovery will demonstrate additional evidence of infringement of the identified MPS products as well as infringement by additional products.

40.     MPS has and continues to infringe the Patents-in-Suit by making, using, selling, and/or offering for sale in this District Infringing Products that embody or use the inventions claimed in the Patents-in-Suit.

41.     The following devices/products/families of products infringe the Patents-in-Suit: mEZDPD1620A\AS, mEZDPD4506A\AS, MP5470, MP8796B, MP8843, MP8845, MP8854, MP8861, MP8869, MPM3695, MPM54304, MPM82504, MPQ8645P, MPQ8875A, MPQ8880, MPQ8883, and MPQ8886 ("Specific Infringing Products").

42.     Exhibit G is an exemplary claim chart demonstrating how certain claims of the '999 Patent are infringed by the MPM3695 device.  Exhibit G is incorporated by reference in its entirety herein.  The other Specific Infringing Products have features identical to or otherwise meeting the claim limitations of certain claims of the '999 Patent.  The '999 Patent is directly infringed by MPS when it either sells or offers for sale a Specific Infringing Product, internally tests a Specific Infringing Product, and/or collaborates with or assists its customers to design, test and implement a Specific Infringing Product in a manner that directly infringes one or more claims of the '999 Patent, as set out in detail in Exhibit G. *See*, *e.g.*, *supra* ¶¶ 10–13.

43.     Exhibit H is an exemplary claim chart demonstrating how certain claims of the '916 Patent are infringed by the MPM3695 device.  Exhibit H is incorporated by reference in its entirety herein.  The other Specific Infringing Products have features identical to or otherwise meeting the claim limitations of certain claims of the '916 Patent.  The '916 Patent is directly infringed by MPS when it either sells or offers for sale a Specific Infringing Product, internally tests a Specific Infringing Product, and/or collaborates with or assists its customers to design, test and implement a Specific Infringing Product in a manner that directly infringes one or more claims of the '916 Patent, as set out in detail in Exhibit H. *See*, *e.g.*, *supra* ¶¶ 10–13.

44.     Exhibit I is an exemplary claim chart demonstrating how certain claims of the '125 Patent are infringed by the MPM3695 device.  Exhibit I is incorporated by reference in its entirety herein.  The other Specific Infringing Products have features identical to or otherwise meeting the claim limitations of certain claims of the '125 Patent.  The '125 Patent is directly infringed by MPS when it either sells or offers for sale a Specific Infringing Product, internally tests a Specific Infringing Product, and/or collaborates with or assists its customers to design, test and implement

16

a Specific Infringing Product in a manner that directly infringes one or more claims of the '125 Patent, as set out in detail in Exhibit I. *See*, *e.g.*, *supra* ¶¶ 10–13.

45.     Exhibit J is an exemplary claim chart demonstrating how certain claims of the '798 Patent are infringed by the MPM3695 device.  Exhibit J is incorporated by reference in its entirety herein.  The other Specific Infringing Products have features identical to or otherwise meeting the claim limitations of certain claims of the '798 Patent.  The '798 Patent is directly infringed by MPS when it either sells or offers for sale a Specific Infringing Product, internally tests a Specific Infringing Product, and/or collaborates with or assists its customers to design, test and implement a Specific Infringing Product in a manner that directly infringes one or more claims of the '798 Patent, as set out in detail in Exhibit J. *See*, *e.g.*, *supra* ¶¶ 10–13.

46.     Exhibit K is an exemplary claim chart demonstrating how certain claims of the '265 Patent are infringed by the MPM3695 device.  Exhibit K is incorporated by reference in its entirety herein.  The other Specific Infringing Products have features identical to or otherwise meeting the claim limitations of certain claims of the '265 Patent.  The '265 Patent is directly infringed by MPS when it either sells or offers for sale a Specific Infringing Product, internally tests a Specific Infringing Product, and/or collaborates with or assists its customers to design, test and implement a Specific Infringing Product in a manner that directly infringes one or more claims of the '265 Patent, as set out in detail in Exhibit K. *See*, *e.g.*, *supra* ¶¶ 10–13.

47.     Exhibit L is an exemplary claim chart demonstrating how certain claims of the '617 Patent are infringed by the MPM3695 device.  Exhibit L is incorporated by reference in its entirety herein.  The other Specific Infringing Products have features identical to or otherwise meeting the claim limitations of certain claims of the '617 Patent.  The '617 Patent is directly infringed by

MPS when it either sells or offers for sale a Specific Infringing Product, internally tests a Specific Infringing Product, and/or collaborates with or assists its customers to design, test and implement a Specific Infringing Product in a manner that directly infringes one or more claims of the '617 Patent, as set out in detail in Exhibit L. *See*, *e.g.*, *supra* ¶¶ 10–13.

48.     The claim charts attached are exemplary, and focus on the MPM3695 module including the various voltages in which it is offered.  The other Specific Infringing Products also infringe because they have identical or similar features that practice the elements of the claims provided in the exemplary chart for the MPM3695 at least because the other devices similarly have PMBus functionality and features that practice all of the claimed elements and further because these other Specific Infringing Products are included in MPS's Virtual Bench Pro software including versions 3.0 and 4.0, and their ability to utilize such software demonstrates the products have the programmable features that infringe at least one claim of each of the Asserted Patents.

## COUNT I
### MPS's Direct Infringement Of The '999 Patent

49.     Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–48 of this Complaint as if fully set forth herein.

50.     Pursuant to 35 U.S.C. § 271(a), MPS has directly infringed and continues to directly infringe the '999 Patent by making, using, selling, offering for sale, and/or importing into the United States Specific Infringing Products that incorporate or make use of at least one or more of the inventions claimed in the '999 Patent, including, but not limited to, systems, services, and/or software incorporating or implementing several MPS power modules including but not limited to at least MPM3695 and the other Specific Infringing Products. MPS directly infringes at least one

or more of the claims of the '999 Patent, including but not limited to claims 1, 9 and 21 of the '999 Patent.

51.     MPS uses its power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claims 1, 9, and 21 of the '999 Patent, including when it makes it Specific Infringing Products and uses those products in a manner that infringes the Patents-in-Suit, including the testing thereof. *See*, *e.g.*, *supra* ¶¶ 10, 11, 42, and Exhibit G.

52.     As a direct and proximate result of MPS's direct infringement of at least one or more of the claims of the '999 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

53.     Unless enjoined, MPS will continue to engage in direct infringement of at least one or more of the claims of the '999 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

54.     Upon information and belief, MPS's direct infringement of at least one or more of the claims of the '999 Patent has been, and continues to be, with full knowledge of the '999 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

55.     MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '999 Patent, including at least claim 21, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT II**

**MPS's Inducement Of Infringement Of The '999 Patent**

56.     Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–55 of this Complaint as if fully set forth herein.

57.     Pursuant to 35 U.S.C. § 271(b), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '999 Patent by actively inducing others to make, use, sell, offer for sale, and/or import into the United States MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '999 Patent including at least claim 1.

58.     Upon information and belief, MPS makes, distributes, and/or advertises MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules including through MPS employees in this district. *See*, *e.g.*, *supra* ¶ 12.

59.     Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '999 Patent including claim 1 by using MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '999 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 42, Exhibit G.

60.     Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '999 Patent. For example, MPS's

customers use MPM3695 and the other Specific Infringing Products in a manner that infringes at least claims 1, 9, and 21 of the '999 Patent.  *See*, *e.g.*, *supra* ¶¶ 10–13, 42, Exhibit G.

61.     Upon information and belief, MPS has had knowledge of the '999 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '999 Patent since at least as early as that same date. *See*, *e.g.*, *supra* ¶¶ 35–38.

62.     Upon information and belief, MPS has provided, and continues to provide, its customers with at least MPM3695 and other Specific Infringing Products, each of which are specifically adapted to be utilized in infringing power control systems as set forth in detail in Exhibit G. MPS knowingly and specifically intends that its customer use MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '999 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 42, Exhibit G.

63.     Upon information and belief, through its marketing activities, instructions and directions, and through the sales and offers for sale of MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products, MPS, with knowledge of the '999 Patent and its infringement, has specifically intended for and/or specifically encouraged and instructed its customers to use, and continues to intend for and/or specifically encourage and instruct its customers to use, MPS's power modules in a manner that infringes at least one or more of the claims of the '999 Patent, including specifically in this district. *See*, *e.g.*, *supra* ¶¶ 12–13.

64.     Upon information and belief, with knowledge of the '999 Patent and its infringement, MPS has provided, and continues to provide, support for installing and using MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '999 Patent. *See*, *e.g.*, *supra* ¶¶ 12–13.

65.     Upon information and belief, with knowledge of the '999 Patent and its infringement, MPS has specifically encouraged, and continues to specifically encourage, customers to infringe the '999 Patent by providing sales and technical support documentation (*e.g.*, in the form of product brochures, data sheets, administrator guides, deployment guides, system configuration guides, *etc.*) that not only instructs customers on how to use at least MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '999 Patent, but also promotes users to do so. Moreover, upon information and belief, MPS has actively assisted and directed, and continues to actively assist and direct, users in deploying MPS's power modules in a manner that infringes at least one or more of the claims of the '999 Patent. *See*, *e.g.*, *supra* ¶¶ 12–13.

66.     As a direct and proximate result of MPS's inducement of direct infringement of at least one or more of the claims of the '999 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

67.     Unless enjoined, MPS will continue to engage in the inducement of direct infringement of at least one or more of the claims of the '999 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

68.     Upon information and belief, MPS's inducement of direct infringement of at least one or more of the claims of the '999 Patent has been, and continues to be, with full knowledge of the '999 Patent, since at least as early as August 2015. *See, e.g., supra* ¶¶ 35–38.

69.     Upon information and belief, MPS has deliberately offered, and continues to offer for sale, Specific Infringing Products with knowledge of their infringement of the '999 Patent since at least as early as August 2015. *See, e.g., supra* ¶¶ 10–13, 42, Exhibit G.

70.     MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '999 Patent, including at least claim 1, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT III**

**MPS's Contributory Infringement Of The '999 Patent**

71.     Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–70 of this Complaint as if fully set forth herein.

72.     Pursuant to 35 U.S.C. § 271(c), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '999 Patent by contributing to the direct infringement by its customers of at least one or more of the claims of the '999 Patent by selling or offering to sell to its customers a material or apparatus—MPS's MPM3695 and the other Specific Infringing Products —for use in practicing at least one or more of the inventions claimed in the '999 Patent including but not limited to claim 1. *See*, *e.g.*, *supra* ¶¶ 10–13, 42, Exhibit G.

73.     Upon information and belief, MPS makes, distributes, and/or advertises MPS's MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules. *See*, *e.g.*, *supra* ¶¶ 10–13.

74.     Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '999 Patent by using MPS's MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '999 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13 and Exhibit G.

75.     Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '999 Patent. For example, MPS's customers use MPS's MPM3695 and the other Specific Infringing Products to implement a power control system having all the elements of at least claim 1 of the '999 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13 and Exhibit G. More particularly, upon information and belief, MPS through its employees works with its customers to integrate at least MPM3695 and the other Specific Infringing Products into power control systems having all the elements of at least claim 1 of the '999 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13.

76.     Upon information and belief, MPS's customers use its power modules including but not limited to MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1, 9 and 21 of the '999 Patent.

77.     Upon information and belief, MPS has had knowledge of the '999 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '999 Patent since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

78.     Upon information and belief, MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products constitute a material component of, or are material in practicing, at least one or more of the inventions claimed in the '999 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13 and Exhibit G.

79.     Upon information and belief, MPS has had knowledge, and continues to have knowledge, that its MPM3695 and the other Specific Infringing Products are especially made or adapted for use in an infringement of at least one or more of the claims of the '999 Patent, and are

not a staple article or commodity of commerce suitable for substantial non-infringing use, which is set out in detail in Exhibit G.  *See*, *e.g.*, *supra* ¶¶ 10-13, 42, and Exhibit G.

80.      As a direct and proximate result of MPS's contributory infringement of at least one or more of the claims of the '999 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

81.      Unless enjoined, MPS will continue to engage in contributory infringement of at least one or more of the claims of the '999 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

82.      Upon information and belief, MPS's contributory infringement of at least one or more of the claims of the '999 Patent has been, and continues to be, with full knowledge of the '999 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

83.      Upon information and belief, MPS has deliberately offered, and continues to offer, the Specific Infringing Products of the '999 Patent with knowledge of their infringement since at least August 2015. *See*, *e.g.*, *supra* ¶¶ 10–13, 42 and Exhibit G.

84.      MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '999 Patent, including at least claims 1, 9 and 21, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT IV

### MPS's Direct Infringement Of The '916 Patent

85.     Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–84 of this Complaint as if fully set forth herein.

86.     Pursuant to 35 U.S.C. § 271(a), MPS has directly infringed and continues to directly infringe the '916 Patent by making, using, selling, offering for sale, and/or importing into the United States Specific Infringing Products that incorporate or make use of at least one or more of the inventions claimed in the '916 Patent, including, but not limited to, systems, services, and/or software incorporating or implementing several MPS power modules including but not limited to at least MPM3695 and the other Specific Infringing Products. MPS directly infringes at least one or more of the claims of the '916 Patent, including but not limited to claims 1 and 14 of the '916 Patent.

87.     MPS uses its power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claims 1, 9, and 21 of the '916 Patent, including when it makes it Specific Infringing Products and uses those products in a manner that infringes the Patents-in-Suit, including the testing thereof. *See*, *e.g.*, *supra* ¶¶ 10–13, 43 and Exhibit H.

88.     As a direct and proximate result of MPS's direct infringement of at least one or more of the claims of the '916 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

89.     Unless enjoined, MPS will continue to engage in direct infringement of at least one or more of the claims of the '916 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

90.     Upon information and belief, MPS's direct infringement of at least one or more of the claims of the '916 Patent has been, and continues to be, with full knowledge of the '916 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

91.     MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '916 Patent, including at least claim 21, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT V

### MPS's Inducement Of Infringement Of The '916 Patent

92.     Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–91 of this Complaint as if fully set forth herein.

93.     Pursuant to 35 U.S.C. § 271(b), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '916 Patent by actively inducing others to make, use, sell, offer for sale, and/or import into the United States MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '916 Patent including at least claim 1.

94.     Upon information and belief, MPS makes, distributes, and/or advertises MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules including through MPS employees in this district. *See*, *e.g.*, *supra* ¶¶ 10–13.

95.     Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '916 Patent including claim 1 by using MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '916 Patent. *See, e.g. supra* ¶¶ 10–13, 43 and Exhibit H.

96.     Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '916 Patent. For example, MPS's customers use MPM3695 and the other Specific Infringing Products in a manner that infringes at least claims 1, 9, and 21 of the '916 Patent.  *See*, *e.g.*, *supra* ¶¶ 10–13, 43 and Exhibit H.

97.     Upon information and belief, MPS has had knowledge of the '916 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '916 Patent since at least as early as that same date. *See*, *e.g.*, *supra* ¶¶ 35–38

98.     Upon information and belief, MPS has provided, and continues to provide, its customers with at least MPM3695 and other Specific Infringing Products, each of which are specifically adapted to be utilized in infringing power control systems as set forth in detail in Exhibit H. MPS knowingly and specifically intends that its customer use MPM3695 and the other

Specific Infringing Products in a manner that infringes at least one or more of the claims of the '916 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 43 and Exhibit H.

99.     Upon information and belief, through its marketing activities, instructions and directions, and through the sales and offers for sale of MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products, MPS, with knowledge of the '916 Patent and its infringement, has specifically intended for and/or specifically encouraged and instructed its customers to use, and continues to intend for and/or specifically encourage and instruct its customers to use, MPS's power modules in a manner that infringes at least one or more of the claims of the '916 Patent, including specifically in this district. *See*, *e.g.*, *supra* ¶¶ 10–13, 43, and Exhibit H.

100.     Upon information and belief, with knowledge of the '916 Patent and its infringement, MPS has provided, and continues to provide, support for installing and using MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '916 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 43, and Exhibit H.

101.     Upon information and belief, with knowledge of the '916 Patent and its infringement, MPS has specifically encouraged, and continues to specifically encourage, customers to infringe the '916 Patent by providing sales and technical support documentation (*e.g.*, in the form of product brochures, data sheets, administrator guides, deployment guides, system configuration guides, *etc.*) that not only instructs customers on how to use at least MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '916 Patent, but also promotes users to do so. Moreover, upon information and belief, MPS has actively assisted and directed, and continues to actively assist and direct, users in deploying

29

MPS's power modules in a manner that infringes at least one or more of the claims of the '916 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 43, and Exhibit H.

102.    As a direct and proximate result of MPS's inducement of direct infringement of at least one or more of the claims of the '916 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

103.    Unless enjoined, MPS will continue to engage in the inducement of direct infringement of at least one or more of the claims of the '916 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

104.    Upon information and belief, MPS's inducement of direct infringement of at least one or more of the claims of the '916 Patent has been, and continues to be, with full knowledge of the '916 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

105.    Upon information and belief, MPS has deliberately offered, and continues to offer for sale, Specific Infringing Products with knowledge of their infringement of the '916 Patent since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 10–13, 43, and Exhibit H.

106.    MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '916 Patent, including at least claim 1, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT VI

### MPS's Contributory Infringement Of The '916 Patent

107.    Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–106 of this Complaint as if fully set forth herein.

108.    Pursuant to 35 U.S.C. § 271(c), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '916 Patent by contributing to the direct infringement by its customers of at least one or more of the claims of the '916 Patent by selling or offering to sell to its customers a material or apparatus—MPS's MPM3695 and the other Specific Infringing Products —for use in practicing at least one or more of the inventions claimed in the '916 Patent including but not limited to claim 1. *See*, *e.g.*, *supra* ¶¶ 10–13, 43, and Exhibit H.

109.    Upon information and belief, MPS makes, distributes, and/or advertises MPS's MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules. *See*, *e.g.*, *supra* ¶¶ 10–13, 43, and Exhibit H.

110.    Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '916 Patent by using MPS's MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '916 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 43, and Exhibit H.

111.    Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '916 Patent. For example, MPS's customers use MPS's MPM3695 and the other Specific Infringing Products to implement a power

control system having all the elements of at least claim 1 of the '916 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 43, and Exhibit H. More particularly, upon information and belief, MPS through its employees works with its customers to integrate at least MPM3695 and the other Specific Infringing Products into power control systems having all the elements of at least claim 1 of the '916 Patent.

112.    Upon information and belief, MPS's customers use its power modules including but not limited to MPM3695 and the other Specific Infringing Products to practice each and every element of at least claims 1 and 14 of the '916 Patent.

113.    Upon information and belief, MPS has had knowledge of the '916 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '916 Patent since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

114.    Upon information and belief, MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products constitute a material component of, or are material in practicing, at least one or more of the inventions claimed in the '916 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 43, and Exhibit H.

115.    Upon information and belief, MPS has had knowledge, and continues to have knowledge, that its MPM3695 and the other Specific Infringing Products are especially made or adapted for use in an infringement of at least one or more of the claims of the '916 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use, which is set out in detail in Exhibit H. *See*, *e.g.*, *supra* ¶¶ 10–13, 43, and Exhibit H.

116.    As a direct and proximate result of MPS's contributory infringement of at least one or more of the claims of the '916 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

117.    Unless enjoined, MPS will continue to engage in contributory infringement of at least one or more of the claims of the '916 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

118.    Upon information and belief, MPS's contributory infringement of at least one or more of the claims of the '916 Patent has been, and continues to be, with full knowledge of the '916 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38

119.    Upon information and belief, MPS has deliberately offered, and continues to offer, the Specific Infringing Products of the '916 Patent with knowledge of their infringement since at least August 2015. *See*, *e.g.*, *supra* ¶¶ 10–13, 43, and Exhibit H.

120.    MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '916 Patent, including at least claims 1 and 14, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT VII
### MPS's Direct Infringement Of The '125 Patent

121.    Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–120 of this Complaint as if fully set forth herein.

122.   Pursuant to 35 U.S.C. § 271(a), MPS has directly infringed and continues to directly infringe the '125 Patent by making, using, selling, offering for sale, and/or importing into the United States Specific Infringing Products that incorporate or make use of at least one or more of the inventions claimed in the '125 Patent, including, but not limited to, systems, services, and/or software incorporating or implementing several MPS power modules including but not limited to at least MPM3695 and the other Specific Infringing Products. MPS directly infringes at least one or more of the claims of the '125 Patent, including but not limited to claims 1, 16 and 23 of the '125 Patent.

123.   MPS uses its power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claims 1, 9, and 21 of the '125 Patent, including when it makes it Specific Infringing Products and uses those products in a manner that infringes the Patents-in-Suit, including the testing thereof. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

124.   As a direct and proximate result of MPS's direct infringement of at least one or more of the claims of the '125 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

125.   Unless enjoined, MPS will continue to engage in direct infringement of at least one or more of the claims of the '125 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

126.   Upon information and belief, MPS's direct infringement of at least one or more of the claims of the '125 Patent has been, and continues to be, with full knowledge of the '125 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

127. MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '125 Patent, including at least claim 21, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT VIII

### MPS's Inducement Of Infringement Of The '125 Patent

128. Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–127 of this Complaint as if fully set forth herein.

129. Pursuant to 35 U.S.C. § 271(b), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '125 Patent by actively inducing others to make, use, sell, offer for sale, and/or import into the United States MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '125 Patent including at least claim 1.

130. Upon information and belief, MPS makes, distributes, and/or advertises MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules including through MPS employees in this district. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

131. Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '125 Patent including claim 1 by using MPM3695 and the other Specific

Infringing Products in a manner that infringes at least one or more of the claims of the '125 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

132.    Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '125 Patent. For example, MPS's customers use MPM3695 and the other Specific Infringing Products in a manner that infringes at least claims 1, 9, and 21 of the '125 Patent.  *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

133.    Upon information and belief, MPS has had knowledge of the '125 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '125 Patent since at least as early as that same date. *See*, *e.g.*, *supra* ¶¶ 35–38.

134.    Upon information and belief, MPS has provided, and continues to provide, its customers with at least MPM3695 and other Specific Infringing Products, each of which are specifically adapted to be utilized in infringing power control systems as set forth in detail in Exhibit I. MPS knowingly and specifically intends that its customer use MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '125 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

135.    Upon information and belief, through its marketing activities, instructions and directions, and through the sales and offers for sale of MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products, MPS, with knowledge of the '125 Patent and its infringement, has specifically intended for and/or specifically encouraged and instructed its customers to use, and continues to intend for and/or specifically encourage and instruct its customers to use, MPS's power modules in a manner that infringes at least one or more

of the claims of the '125 Patent, including specifically in this district. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

136.   Upon information and belief, with knowledge of the '125 Patent and its infringement, MPS has provided, and continues to provide, support for installing and using MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '125 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

137.   Upon information and belief, with knowledge of the '125 Patent and its infringement, MPS has specifically encouraged, and continues to specifically encourage, customers to infringe the '125 Patent by providing sales and technical support documentation (*e.g.*, in the form of product brochures, data sheets, administrator guides, deployment guides, system configuration guides, *etc.*) that not only instructs customers on how to use at least MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '125 Patent, but also promotes users to do so. Moreover, upon information and belief, MPS has actively assisted and directed, and continues to actively assist and direct, users in deploying MPS's power modules in a manner that infringes at least one or more of the claims of the '125 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

138.   As a direct and proximate result of MPS's inducement of direct infringement of at least one or more of the claims of the '125 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

139.   Unless enjoined, MPS will continue to engage in the inducement of direct infringement of at least one or more of the claims of the '125 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

140.     Upon information and belief, MPS's inducement of direct infringement of at least one or more of the claims of the '125 Patent has been, and continues to be, with full knowledge of the '125 Patent, since at least as early as August 2015. *See, e.g., supra* ¶¶ 35–38.

141.     Upon information and belief, MPS has deliberately offered, and continues to offer for sale, Specific Infringing Products with knowledge of their infringement of the '125 Patent since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

142.     MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '125 Patent, including at least claim 1, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT IX

### MPS's Contributory Infringement Of The '125 Patent

143.     Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–142 of this Complaint as if fully set forth herein.

144.     Pursuant to 35 U.S.C. § 271(c), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '125 Patent by contributing to the direct infringement by its customers of at least one or more of the claims of the '125 Patent by selling or offering to sell to its customers a material or apparatus—MPS's MPM3695 and the other Specific Infringing Products —for use in practicing at least one or more of the inventions claimed in the '125 Patent including but not limited to claim 1. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

145.    Upon information and belief, MPS makes, distributes, and/or advertises MPS's MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

146.    Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '125 Patent by using MPS's MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '125 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

147.    Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '125 Patent. For example, MPS's customers use MPS's MPM3695 and the other Specific Infringing Products to implement a power control system having all the elements of at least claim 1 of the '125 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I. More particularly, upon information and belief, MPS through its employees works with its customers to integrate at least MPM3695 and the other Specific Infringing Products into power control systems having all the elements of at least claim 1 of the '125 Patent.

148.    Upon information and belief, MPS's customers use its power modules including but not limited to MPM3695 and the other Specific Infringing Products to practice each and every element of at least claims 1, 16, and 23 of the '125 Patent.

149.    Upon information and belief, MPS has had knowledge of the '125 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '125 Patent since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

150.    Upon information and belief, MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products constitute a material component of, or are material in practicing, at least one or more of the inventions claimed in the '125 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

151.    Upon information and belief, MPS has had knowledge, and continues to have knowledge, that its MPM3695 and the other Specific Infringing Products are especially made or adapted for use in an infringement of at least one or more of the claims of the '125 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use, which is set out in detail in Exhibit I. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

152.    As a direct and proximate result of MPS's contributory infringement of at least one or more of the claims of the '125 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

153.    Unless enjoined, MPS will continue to engage in contributory infringement of at least one or more of the claims of the '125 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

154.    Upon information and belief, MPS's contributory infringement of at least one or more of the claims of the '125 Patent has been, and continues to be, with full knowledge of the '125 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

155.    Upon information and belief, MPS has deliberately offered, and continues to offer, the Specific Infringing Products of the '125 Patent with knowledge of their infringement since at least August 2015. *See*, *e.g.*, *supra* ¶¶ 10–13, 44, and Exhibit I.

156. MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '125 Patent, including at least claims 1, 16 and 23, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT X
### MPS's Direct Infringement Of The '798 Patent

157. Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–156 of this Complaint as if fully set forth herein.

158. Pursuant to 35 U.S.C. § 271(a), MPS has directly infringed and continues to directly infringe the '798 Patent by making, using, selling, offering for sale, and/or importing into the United States Specific Infringing Products that incorporate or make use of at least one or more of the inventions claimed in the '798 Patent, including, but not limited to, systems, services, and/or software incorporating or implementing several MPS power modules including but not limited to at least MPM3695 and the other Specific Infringing Products. MPS directly infringes at least one or more of the claims of the '798 Patent, including but not limited to claims 1, 24, and 44 of the '798 Patent.

159. MPS uses its power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claims 1, 9, and 21 of the '798 Patent, including when it makes it Specific Infringing Products and uses those products in a manner that infringes the Patents-in-Suit, including the testing thereof. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

160.    As a direct and proximate result of MPS's direct infringement of at least one or more of the claims of the '798 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

161.    Unless enjoined, MPS will continue to engage in direct infringement of at least one or more of the claims of the '798 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

162.    Upon information and belief, MPS's direct infringement of at least one or more of the claims of the '798 Patent has been, and continues to be, with full knowledge of the '798 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

163.    MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '798 Patent, including at least claim 21, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT XI
### MPS's Inducement Of Infringement Of The '798 Patent

164.    Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–163 of this Complaint as if fully set forth herein.

165.    Pursuant to 35 U.S.C. § 271(b), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '798 Patent by actively inducing others to make, use, sell, offer for sale, and/or import into the United States MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products in a

manner that infringes at least one or more of the claims of the '798 Patent including at least claim 1.

166.     Upon information and belief, MPS makes, distributes, and/or advertises MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules including through MPS employees in this district. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

167.     Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '798 Patent including claim 1 by using MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '798 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

168.     Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '798 Patent. For example, MPS's customers use MPM3695 and the other Specific Infringing Products in a manner that infringes at least claims 1, 9, and 21 of the '798 Patent.  *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

169.     Upon information and belief, MPS has had knowledge of the '798 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '798 Patent since at least as early as that same date. *See*, *e.g.*, *supra* ¶¶ 35–38.

170.     Upon information and belief, MPS has provided, and continues to provide, its customers with at least MPM3695 and other Specific Infringing Products, each of which are

specifically adapted to be utilized in infringing power control systems as set forth in detail in Exhibit J. MPS knowingly and specifically intends that its customer use MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '798 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

171.    Upon information and belief, through its marketing activities, instructions and directions, and through the sales and offers for sale of MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products, MPS, with knowledge of the '798 Patent and its infringement, has specifically intended for and/or specifically encouraged and instructed its customers to use, and continues to intend for and/or specifically encourage and instruct its customers to use, MPS's power modules in a manner that infringes at least one or more of the claims of the '798 Patent, including specifically in this district. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

172.    Upon information and belief, with knowledge of the '798 Patent and its infringement, MPS has provided, and continues to provide, support for installing and using MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '798 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

173.    Upon information and belief, with knowledge of the '798 Patent and its infringement, MPS has specifically encouraged, and continues to specifically encourage, customers to infringe the '798 Patent by providing sales and technical support documentation (*e.g.*, in the form of product brochures, data sheets, administrator guides, deployment guides, system configuration guides, *etc.*) that not only instructs customers on how to use at least MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims

of the '798 Patent, but also promotes users to do so. Moreover, upon information and belief, MPS has actively assisted and directed, and continues to actively assist and direct, users in deploying MPS's power modules in a manner that infringes at least one or more of the claims of the '798 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

174.    As a direct and proximate result of MPS's inducement of direct infringement of at least one or more of the claims of the '798 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

175.    Unless enjoined, MPS will continue to engage in the inducement of direct infringement of at least one or more of the claims of the '798 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

176.    Upon information and belief, MPS's inducement of direct infringement of at least one or more of the claims of the '798 Patent has been, and continues to be, with full knowledge of the '798 Patent, since at least as early as August 2015. *See, e.g., supra* ¶¶ 35–38.

177.    Upon information and belief, MPS has deliberately offered, and continues to offer for sale, Specific Infringing Products with knowledge of their infringement of the '798 Patent since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

178.    MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '798 Patent, including at least claim 1, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT XII**

**MPS's Contributory Infringement Of The '798 Patent**

179.     Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–178 of this Complaint as if fully set forth herein.

180.     Pursuant to 35 U.S.C. § 271(c), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '798 Patent by contributing to the direct infringement by its customers of at least one or more of the claims of the '798 Patent by selling or offering to sell to its customers a material or apparatus—MPS's MPM3695 and the other Specific Infringing Products —for use in practicing at least one or more of the inventions claimed in the '798 Patent including but not limited to claim 1. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

181.     Upon information and belief, MPS makes, distributes, and/or advertises MPS's MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

182.     Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '798 Patent by using MPS's MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '798 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

183.     Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '798 Patent. For example, MPS's customers use MPS's MPM3695 and the other Specific Infringing Products to implement a power

control system having all the elements of at least claim 1 of the '798 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.  More particularly, upon information and belief, MPS through its employees works with its customers to integrate at least MPM3695 and the other Specific Infringing Products into power control systems having all the elements of at least claim 1 of the '798 Patent.

184.    Upon information and belief, MPS's customers use its power modules including but not limited to MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1, 24, and 44 of the '798 Patent.

185.    Upon information and belief, MPS has had knowledge of the '798 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '798 Patent since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

186.    Upon information and belief, MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products constitute a material component of, or are material in practicing, at least one or more of the inventions claimed in the '798 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

187.    Upon information and belief, MPS has had knowledge, and continues to have knowledge, that its MPM3695 and the other Specific Infringing Products are especially made or adapted for use in an infringement of at least one or more of the claims of the '798 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use, which is set out in detail in Exhibit J. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

188.    As a direct and proximate result of MPS's contributory infringement of at least one or more of the claims of the '798 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

189.    Unless enjoined, MPS will continue to engage in contributory infringement of at least one or more of the claims of the '798 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

190.    Upon information and belief, MPS's contributory infringement of at least one or more of the claims of the '798 Patent has been, and continues to be, with full knowledge of the '798 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

191.    Upon information and belief, MPS has deliberately offered, and continues to offer, the Specific Infringing Products of the '798 Patent with knowledge of their infringement since at least August 2015. *See*, *e.g.*, *supra* ¶¶ 10–13, 45 and Exhibit J.

192.    MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '798 Patent, including at least claims 1, 24, and 44, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT XIII
### MPS's Direct Infringement Of The '265 Patent

193.    Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–192 of this Complaint as if fully set forth herein.

194.    Pursuant to 35 U.S.C. § 271(a), MPS has directly infringed and continues to directly infringe the '265 Patent by making, using, selling, offering for sale, and/or importing into the United States Specific Infringing Products that incorporate or make use of at least one or more of the inventions claimed in the '265 Patent, including, but not limited to, systems, services, and/or software incorporating or implementing several MPS power modules including but not limited to at least MPM3695 and the other Specific Infringing Products. MPS directly infringes at least one or more of the claims of the '265 Patent, including but not limited to claims 1 and 10 of the '265 Patent.

195.    MPS uses its power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claims 1, 9, and 21 of the '265 Patent, including when it makes it Specific Infringing Products and uses those products in a manner that infringes the Patents-in-Suit, including the testing thereof. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

196.    As a direct and proximate result of MPS's direct infringement of at least one or more of the claims of the '265 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

197.    Unless enjoined, MPS will continue to engage in direct infringement of at least one or more of the claims of the '265 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

198.    Upon information and belief, MPS's direct infringement of at least one or more of the claims of the '265 Patent has been, and continues to be, with full knowledge of the '265 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

199.    MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '265 Patent, including at least claim 21, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT XIV
### MPS's Inducement Of Infringement Of The '265 Patent

200.    Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–199 of this Complaint as if fully set forth herein.

201.    Pursuant to 35 U.S.C. § 271(b), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '265 Patent by actively inducing others to make, use, sell, offer for sale, and/or import into the United States MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '265 Patent including at least claim 1.

202.    Upon information and belief, MPS makes, distributes, and/or advertises MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules including through MPS employees in this district. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

203.    Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '265 Patent including claim 1 by using MPM3695 and the other Specific

Infringing Products in a manner that infringes at least one or more of the claims of the '265 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

204.    Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '265 Patent. For example, MPS's customers use MPM3695 and the other Specific Infringing Products in a manner that infringes at least claims 1, 9, and 21 of the '265 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

205.    Upon information and belief, MPS has had knowledge of the '265 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '265 Patent since at least as early as that same date. *See*, *e.g.*, *supra* ¶¶ 35–38.

206.    Upon information and belief, MPS has provided, and continues to provide, its customers with at least MPM3695 and other Specific Infringing Products, each of which are specifically adapted to be utilized in infringing power control systems as set forth in detail in Exhibit K. MPS knowingly and specifically intends that its customer use MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '265 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

207.    Upon information and belief, through its marketing activities, instructions and directions, and through the sales and offers for sale of MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products, MPS, with knowledge of the '265 Patent and its infringement, has specifically intended for and/or specifically encouraged and instructed its customers to use, and continues to intend for and/or specifically encourage and instruct its customers to use, MPS's power modules in a manner that infringes at least one or more

of the claims of the '265 Patent, including specifically in this district. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

208.    Upon information and belief, with knowledge of the '265 Patent and its infringement, MPS has provided, and continues to provide, support for installing and using MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '265 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

209.    Upon information and belief, with knowledge of the '265 Patent and its infringement, MPS has specifically encouraged, and continues to specifically encourage, customers to infringe the '265 Patent by providing sales and technical support documentation (*e.g.*, in the form of product brochures, data sheets, administrator guides, deployment guides, system configuration guides, *etc.*) that not only instructs customers on how to use at least MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '265 Patent, but also promotes users to do so. Moreover, upon information and belief, MPS has actively assisted and directed, and continues to actively assist and direct, users in deploying MPS's power modules in a manner that infringes at least one or more of the claims of the '265 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

210.    As a direct and proximate result of MPS's inducement of direct infringement of at least one or more of the claims of the '265 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

211.    Unless enjoined, MPS will continue to engage in the inducement of direct infringement of at least one or more of the claims of the '265 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

212.    Upon information and belief, MPS's inducement of direct infringement of at least one or more of the claims of the '265 Patent has been, and continues to be, with full knowledge of the '265 Patent, since at least as early as August 2015. *See, e.g., supra* ¶¶ 35–38.

213.    Upon information and belief, MPS has deliberately offered, and continues to offer for sale, Specific Infringing Products with knowledge of their infringement of the '265 Patent since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

214.    MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '265 Patent, including at least claim 1, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT XV

### MPS's Contributory Infringement Of The '265 Patent

215.    Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–213 of this Complaint as if fully set forth herein.

216.    Pursuant to 35 U.S.C. § 271(c), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '265 Patent by contributing to the direct infringement by its customers of at least one or more of the claims of the '265 Patent by selling or offering to sell to its customers a material or apparatus—MPS's MPM3695 and the other Specific Infringing Products —for use in practicing at least one or more of the inventions claimed in the '265 Patent including but not limited to claim 1. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

217.    Upon information and belief, MPS makes, distributes, and/or advertises MPS's MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

218.    Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '265 Patent by using MPS's MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '265 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

219.    Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '265 Patent. For example, MPS's customers use MPS's MPM3695 and the other Specific Infringing Products to implement a power control system having all the elements of at least claim 1 of the '265 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13 and Exhibit K. More particularly, upon information and belief, MPS through its employees works with its customers to integrate at least MPM3695 and the other Specific Infringing Products into power control systems having all the elements of at least claim 1 of the '265 Patent.

220.    Upon information and belief, MPS's customers use its power modules including but not limited to MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 and 10 of the '265 Patent.

221.    Upon information and belief, MPS has had knowledge of the '265 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '265 Patent since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

222.    Upon information and belief, MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products constitute a material component of, or are material in practicing, at least one or more of the inventions claimed in the '265 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

223.    Upon information and belief, MPS has had knowledge, and continues to have knowledge, that its MPM3695 and the other Specific Infringing Products are especially made or adapted for use in an infringement of at least one or more of the claims of the '265 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use, which is set out in detail in Exhibit K. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

224.    As a direct and proximate result of MPS's contributory infringement of at least one or more of the claims of the '265 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

225.    Unless enjoined, MPS will continue to engage in contributory infringement of at least one or more of the claims of the '265 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

226.    Upon information and belief, MPS's contributory infringement of at least one or more of the claims of the '265 Patent has been, and continues to be, with full knowledge of the '265 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

227.    Upon information and belief, MPS has deliberately offered, and continues to offer, the Specific Infringing Products of the '265 Patent with knowledge of their infringement since at least August 2015. *See*, *e.g.*, *supra* ¶¶ 10–13, 46 and Exhibit K.

228.     MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '265 Patent, including at least claims 1 and 10, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT XVI

### MPS's Direct Infringement Of The '617 Patent

229.     Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–228 of this Complaint as if fully set forth herein.

230.     Pursuant to 35 U.S.C. § 271(a), MPS has directly infringed and continues to directly infringe the '617 Patent by making, using, selling, offering for sale, and/or importing into the United States Specific Infringing Products that incorporate or make use of at least one or more of the inventions claimed in the '617 Patent, including, but not limited to, systems, services, and/or software incorporating or implementing several MPS power modules including but not limited to at least MPM3695 and the other Specific Infringing Products. MPS directly infringes at least one or more of the claims of the '617 Patent, including but not limited to claim 1 of the '617 Patent.

231.     MPS uses its power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claims 1, 9, and 21 of the '617 Patent, including when it makes it Specific Infringing Products and uses those products in a manner that infringes the Patents-in-Suit, including the testing thereof. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

232.     As a direct and proximate result of MPS's direct infringement of at least one or more of the claims of the '617 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

233.     Unless enjoined, MPS will continue to engage in direct infringement of at least one or more of the claims of the '617 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

234.     Upon information and belief, MPS's direct infringement of at least one or more of the claims of the '617 Patent has been, and continues to be, with full knowledge of the '617 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

235.     MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '617 Patent, including at least claim 21, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT XVII
### MPS's Inducement Of Infringement Of The '617 Patent

236.     Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–235 of this Complaint as if fully set forth herein.

237.     Pursuant to 35 U.S.C. § 271(b), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '617 Patent by actively inducing others to make, use, sell, offer for sale, and/or import into the United States MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products in a

manner that infringes at least one or more of the claims of the '617 Patent including at least claim 1.

238.    Upon information and belief, MPS makes, distributes, and/or advertises MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules including through MPS employees in this district. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

239.    Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '617 Patent including claim 1 by using MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '617 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

240.    Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '617 Patent. For example, MPS's customers use MPM3695 and the other Specific Infringing Products in a manner that infringes at least claims 1, 9, and 21 of the '617 Patent.  *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

241.    Upon information and belief, MPS has had knowledge of the '617 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '617 Patent since at least as early as that same date. *See*, *e.g.*, *supra* ¶¶ 35–38.

242.    Upon information and belief, MPS has provided, and continues to provide, its customers with at least MPM3695 and other Specific Infringing Products, each of which are

specifically adapted to be utilized in infringing power control systems as set forth in detail in Exhibit L. MPS knowingly and specifically intends that its customer use MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '617 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

243.   Upon information and belief, through its marketing activities, instructions and directions, and through the sales and offers for sale of MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products, MPS, with knowledge of the '617 Patent and its infringement, has specifically intended for and/or specifically encouraged and instructed its customers to use, and continues to intend for and/or specifically encourage and instruct its customers to use, MPS's power modules in a manner that infringes at least one or more of the claims of the '617 Patent, including specifically in this district. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

244.   Upon information and belief, with knowledge of the '617 Patent and its infringement, MPS has provided, and continues to provide, support for installing and using MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '617 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

245.   Upon information and belief, with knowledge of the '617 Patent and its infringement, MPS has specifically encouraged, and continues to specifically encourage, customers to infringe the '617 Patent by providing sales and technical support documentation (*e.g.*, in the form of product brochures, data sheets, administrator guides, deployment guides, system configuration guides, *etc.*) that not only instructs customers on how to use at least MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims

of the '617 Patent, but also promotes users to do so. Moreover, upon information and belief, MPS has actively assisted and directed, and continues to actively assist and direct, users in deploying MPS's power modules in a manner that infringes at least one or more of the claims of the '617 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

246.    As a direct and proximate result of MPS's inducement of direct infringement of at least one or more of the claims of the '617 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

247.    Unless enjoined, MPS will continue to engage in the inducement of direct infringement of at least one or more of the claims of the '617 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

248.    Upon information and belief, MPS's inducement of direct infringement of at least one or more of the claims of the '617 Patent has been, and continues to be, with full knowledge of the '617 Patent, since at least as early as August 2015. *See, e.g., supra* ¶¶ 35–38.

249.    Upon information and belief, MPS has deliberately offered, and continues to offer for sale, Specific Infringing Products with knowledge of their infringement of the '617 Patent since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

250.    MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '617 Patent, including at least claim 1, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT XVIII

## MPS's Contributory Infringement Of The '617 Patent

251.    Bel Power repeats and realleges each and every allegation of the foregoing Paragraphs 1–250 of this Complaint as if fully set forth herein.

252.    Pursuant to 35 U.S.C. § 271(c), MPS has indirectly infringed and continues to indirectly infringe at least one or more of the claims of the '617 Patent by contributing to the direct infringement by its customers of at least one or more of the claims of the '617 Patent by selling or offering to sell to its customers a material or apparatus—MPS's MPM3695 and the other Specific Infringing Products —for use in practicing at least one or more of the inventions claimed in the '617 Patent including but not limited to claim 1. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

253.    Upon information and belief, MPS makes, distributes, and/or advertises MPS's MPM3695 and the other Specific Infringing Products in this District and elsewhere in the United States, including through at least MPS's website and authorized resellers of its power modules. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

254.    Upon information and belief, MPS's customers directly infringe at least one or more of the claims of the '617 Patent by using MPS's MPM3695 and the other Specific Infringing Products in a manner that infringes at least one or more of the claims of the '617 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

255.    Upon information and belief, MPS's customers use MPS's power modules including but not limited to at least MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '617 Patent. For example, MPS's customers use MPS's MPM3695 and the other Specific Infringing Products to implement a power

control system having all the elements of at least claim 1 of the '617 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13 and Exhibit L. More particularly, upon information and belief, MPS through its employees works with its customers to integrate at least MPM3695 and the other Specific Infringing Products into power control systems having all the elements of at least claim 1 of the '617 Patent.

256.    Upon information and belief, MPS's customers use its power modules including but not limited to MPM3695 and the other Specific Infringing Products to practice each and every element of at least claim 1 of the '617 Patent.

257.    Upon information and belief, MPS has had knowledge of the '617 Patent since at least as early as August 2015, and has had knowledge of the infringement of at least one or more of the claims of the '617 Patent since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

258.    Upon information and belief, MPS's power modules including but not limited to MPM3695 and the other Specific Infringing Products constitute a material component of, or are material in practicing, at least one or more of the inventions claimed in the '617 Patent. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

259.    Upon information and belief, MPS has had knowledge, and continues to have knowledge, that its MPM3695 and the other Specific Infringing Products are especially made or adapted for use in an infringement of at least one or more of the claims of the '617 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use, which is set out in detail in Exhibit L. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

260.    As a direct and proximate result of MPS's contributory infringement of at least one or more of the claims of the '617 Patent, Bel Power has suffered injury and monetary damage for which it is entitled to recover damages.

261.    Unless enjoined, MPS will continue to engage in contributory infringement of at least one or more of the claims of the '617 Patent and will cause additional irreparable injury to Bel Power for which it has no adequate remedy at law.

262.    Upon information and belief, MPS's contributory infringement of at least one or more of the claims of the '617 Patent has been, and continues to be, with full knowledge of the '617 Patent, since at least as early as August 2015. *See*, *e.g.*, *supra* ¶¶ 35–38.

263.    Upon information and belief, MPS has deliberately offered, and continues to offer, the Specific Infringing Products of the '617 Patent with knowledge of their infringement since at least August 2015. *See*, *e.g.*, *supra* ¶¶ 10–13, 47 and Exhibit L.

264.    MPS's knowing, willful and deliberate infringement of at least one or more of the claims of the '617 Patent, including at least claim 1, in conscious disregard of Bel Power's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

**WHEREFORE**, Plaintiff Bel Power prays for judgment in its favor and against MPS as follows:

A. Adjudging that MPS has directly infringed, actively induced infringement of and contributorily infringed at least one or more of the claims of the '999 Patent, the

'916 Patent, the '125 Patent, the '798 Patent, the '265 Patent and the '617 Patent, in violation of 35 U.S.C. § 271(a), (b) and (c);

B.   Issuing a permanent injunction against MPS's continued direct and contributory infringement of at least one or more of the claims of '999 Patent, the '916 Patent, the '125 Patent, the '798 Patent, the '265 Patent, and the '617 Patent, as well as against continued inducement of infringement of at least one or more of the claims of '999 Patent, the '916 Patent, the '125 Patent, the '798 Patent, the '265 Patent, and the '617 Patent;

C.   Awarding to Bel Power all damages caused by MPS in an amount to be determined at trial, but not less than a reasonable royalty;

D.   Finding that MPS's infringement was willful entitling Bel Power to an award of treble damages pursuant to 35 U.S.C. § 284;

E.   Finding that MPS's infringement constitutes an exceptional case entitling Bel Power to an award of its attorneys' fees pursuant to 35 U.S.C. § 285;

F.   Awarding to Bel Power pre-judgment interest at the maximum legal rate from the earliest date allowed until the date of judgment;

G.   Awarding to Bel Power post-judgment interest at the maximum legal rate pursuant to 28 U.S.C. § 1961;

H.   Awarding to Bel Power all costs incurred by it in connection with this lawsuit pursuant to 28 U.S.C. § 1920; and

I.   Such other and further relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all causes of action triable by jury.

Dated:  June 23, 2021

Respectfully submitted,

_/s/ Melissa R. Smith_

Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel:  (903) 934-8450
Fax:  (903) 934-9257

Brian J. Sodikoff (_pro hac vice to be filed_)
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Suite 1600
Chicago, IL  60661
Telephone: (312) 912-5200
Facsimile: (312) 902-1061
Brian.sodikoff@kattenlaw.com

Christopher B. Ferenc (_pro hac vice to be filed_)
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, N.W.
Suite 200
Washington, D.C. 20007
Telephone: (202) 625-3500
Facsimile: (202) 298-7570
christopher.ferenc@kattenlaw.com

_Attorneys for Plaintiff_
_Bel Power Solutions, Inc._