### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

**BEL POWER SOLUTIONS INC.,**
  *Plaintiff,*

-vs-

**MONOLITHIC POWER SYSTEMS, INC.,**
  *Defendant.*

§
§
§
§
§
§
§
§
§
§
§

**CIVIL NO. 6:21-CV-655-ADA**

## ORDER DENYING MOTION TO DISMISS OR TRANSFER

Defendant Monolithic Power Systems, Inc. ("Monolithic" or "Defendant") filed its Motion to Transfer or Dismiss (the "Motion") on September 20, 2021. Dkt. No. 13. Plaintiff Bel Power Solutions Inc. ("Bel Power" or "Plaintiff") filed its Opposition to Monolithic's Motion on January 10, 2022. Dkt. No. 30. Monolithic filed its Reply on January 24, 2022. Dkt. No. 33. After careful consideration of the briefing, the Court **DENIES** Monolithic's Motion to Dismiss for Improper Venue and **DENIES** Monolithic's alternative motion to transfer.

### I. BACKGROUND FOR MOTION TO DISMISS

Bel Power filed a Complaint against Monolithic alleging infringement of patents related to power control technology. Dkt. No. 1. The Complaint states that venue is proper in the Western District of Texas because Monolithic employs at least four individuals here to conduct systematic and continuous business: Jason Bone, Roberto Grullon, Sam Robinson, and Victor Gallagher. *Id.* ¶ 8. The Complaint alleges these individuals serve end users or make sales in this district. *Id.* Monolithic also sought to hire a local employee to provide onsite support around the Austin area. *Id.*

Monolithic is a domestic corporation organized and existing under the laws of Delaware. *Id.* ¶ 2. Monolithic has multiple U.S. regional headquarters in San Jose, California; Kirkland, Washington; and Detroit, Michigan; but not in this district. Dkt. 13 at 3.

Monolithic does business with ███████████████████████ customers in this district, including ███████████████████████████████████████████ ████████████████████████████████████████████████████████ Monolithic posted a job opening for an engineer in Austin to service these customers. Dkt. 31-5.

## II.    LEGAL STANDARD FOR MOTION TO DISMISS

### A.  Patent Venue

Section 1400(b) of Title 28 of the United States Code constitutes the exclusive provision controlling venue in patent infringement proceedings. *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1518 (2017). A claim for patent infringement must be brought "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). For a defendant to have a "regular and established place of business," (1) it must have a physical place of business in the district; (2) that physical place of business must be regular and established; and (3) that place of business must be the defendant's. *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Section 1400(b) is intentionally restrictive, and "the Plaintiff bears the burden of establishing proper venue." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013–14 (Fed. Cir. 2018).

For the purposes of venue, the place of business need not be a "fixed physical presence in the sense of a formal office or store." *Cray,* 871 F.3d at 1362 (quoting *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)). Courts have routinely found a "regular and established place of business" where a party "used its employees' homes to store its 'literature, documents and

products' and, in some instances, like distribution centers, storing inventory that the employees then directly took to its clients." *Id.* (quoting *Cordis*, 769 F.2d at 735); *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 552 (S.D.N.Y. 2018) (holding home offices as "place of the defendant" when its employees had products and small centrifuges in their homes); *Shelter-Lite, Inc. v. Reeves Bros., Inc.,* 356 F. Supp. 189, 191 (N.D. Ohio 1973) (finding venue at an employee's home when business customers knew to reach him there); *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 960 (E.D. Tex. 2018) ("[T]here can be little doubt that the storage warehouses are places of business, *even if the public never interacts with the warehouse*.") (emphasis in original).

### III.   ANALYSIS OF MOTION TO DISMISS

**A. Bel Power sufficiently pled infringement by Monolithic in the Western District of Texas.**

The complaint sufficiently pleads infringement by Monolithic in the Western District of Texas. Dkt. No. 1. Monolithic does not contest this requirement of the venue statute.

**B. Monolithic does not reside in the Western District of Texas.**

Under 28 U.S.C. § 1400(b), a claim for patent infringement must be brought "in the judicial district where the defendant resides." MPS is incorporated in Delaware (Compl. ¶ 2), has its headquarters elsewhere, and therefore does not "reside" in this district.

**C. Monolithic has a regular and established place of business in this district.**

The facts of this case are nearly identical to those in *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 552 (S.D.N.Y. 2018), and Monolithic does not distinguish this case in its reply. This Court finds venue proper here under the same reasoning used in *RegenLab*.

### a. Facts weighing against venue like in *RegenLab*.

In *RegenLab,* the employer did not make any contributions or payments towards its employees' workplaces, nor did it own, lease, rent, or exercise any control over its employees' workplaces in the challenged venue. 335 F. Supp. 3d at 552. The employer did not require employees to reside in their sales areas. *Id.* The employer handled all customer suggestions, complaints, and other feedback or requests at its corporate office in another district. *Id.* That office also processed all sales. *Id.* The employer did not promote any address or phone number in the challenged venue. *Id.* Finally, the employer does not provide any secretarial or other support services in the challenged venue. *Id.*

Here, Monolithic does not make any contributions towards the rent of its employees' homes in this district, and it does not own, lease, rent, or exercise any control over its employees' homes in this district. Monolithic does not require Jason Bone, Roberto Grullon, Sam Robinson, and Victor Gallagher to reside in this district. Monolithic does not provide administrative support to the homes of Jason Bone, Roberto Grullon, Sam Robinson, or Victor Gallagher. Monolithic does not list their homes as its locations of Monolithic. Monolithic's administrative support is provided in San Jose or Kirkland.

### b. Facts supporting venue like in *RegenLab*.

In *RegenLab,* the employer solicited salespeople in public advertisements to cover the challenged venue area and preferred that those employees live in their assigned sales area. *RegenLab,* 335 F. Supp. 3d at 552. This differentiated *RegenLab* from *Cray*, where "no evidence show[ed] that [the defendant] believed a location within the Eastern District of Texas to be important to the business performed" or that the defendant "had any intention to maintain some place of business in that district in the event [the employees] decided to terminate their residences as a place where they conducted business." *Id.* (quoting *Cray*, 871 F.3d at 1365).

4

Here, Monolithic specifically solicits employees to work in Austin. In 2018, Monolithic approved an Austin-based replacement for a departing employee named Mario. Dkt. No. 30-3. Monolithic posted an opening for an Austin-based employee in public postings. Dkt. Nos. 31-4, 31-5. Monolithic argues that the postings are outdated, no hire was made, and the employees are not required to reside in Texas. But the evidence shows a history of Texas-targeted hiring in 2009, 2018, and 2021. Dkt. No. 30-3, 31-4, 31-5. These job postings specifically mention Austin as the location, and purpose of these jobs is to support local Austin-based ███████ *Id.* Monolithic argues that "nobody was hired for this position." Dkt. No. 33-1 ¶ 3. But Monolithic ended up with four employees in this District through some other mechanism, likely by some sort of internal transfer or volunteer instead of an external hiring. *Id.* Thus, this activity differentiates Monolithic's position from *Cray*, where "no evidence show[ed] that [the defendant] believed a location within the Eastern District of Texas to be important to the business performed" or that the defendant "had any intention to maintain some place of business in that district in the event [the employees] decided to terminate their residences as a place where they conducted business." *Cray*, 871 F.3d at 1365.

Additionally, the employees' inventory counts favored finding venue in *RegenLab*. 335 F. Supp. 3d at 552. In *RegenLab*, the employer claimed that its employees in the disputed venue "do not, and did not, maintain an inventory of product or literature for sale." *Id.* While its employees did not sell the company's products, they did possess them. *Id.* The employee that worked in the disputed venue had his own sales kit, which contained "3-4 sample PRP kits and less than fifteen copies of literature" which are used for sales demos, as well as "a small centrifuge and other accessories used for sales demonstrations." *Id.* The previous company employee likewise had her "own sales kit, which contained 3-4 sample PRP kits and less than fifteen copies of literature used

only for sales demos," as well as "a small centrifuge and other accessories used for sales demonstrations." *Id.*

Here, the employees' inventory count also favors finding venue. Monolithic ships a small number (about fifteen or so) of engineering samples to two of its employees who live in and work from home in this district: Mr. Grullon and Mr. Bone. Mr. Bone uses the samples for internal testing and validation to make sure they operate properly as designed. Dkt. 30-2 at 12:19-13:20. Mr. Grullon does not store or personally use the engineering samples because he delivers them to local customers, such as ███ in this district. Dkt. 30-5 at 28:1–29:7. Thus, Monolithic's employees in this District collectively possess and deliver its products. Additionally, Mr. Bone possesses a fair amount of Monolithic's equipment, including two oscilloscopes, four to five power supplies, two electric loads, a logic analyzer, a soldering iron, a multimeter, a function generator, three to five samples of microcontrollers, MOSFETs, five op-amps, ten to fifteen comparators, twenty inductors, and fifty sample demonstration boards. Dkt. 30-2 at 13:16–20:9. Monolithic provided and owns this equipment, which is not typically found in a generic home office. Rather, they are lab-specific items like the "small centrifuge and other accessories" in *RegenLab*. This equipment serves the sole purpose of allowing Mr. Bone to conduct testing and validation as part of his job for Monolithic. 335 F. Supp. 3d at 552.

In *RegenLab,* the employees did not merely possess those products—their use in the challenged venue was part of each employee's job description. *Id.* When products arrived at a customer's home, the employee used the products stored in their home office to conduct demonstrations. *Id.* This contrasts with *Cray*, whose forum state-based employees did not store any inventory or conduct demonstrations in the state or serve any customers in the district. *Id.* (citing *Cray*, 871 F.3d at 1365).

Similarly, Monolithic's employee Mr. Grullon did not merely possess sample products. Their use in Austin was part of Monolithic's service to its Austin-based ███ a job that fell on Mr. Grullon. When sample products arrived at Mr. Grullon's home, he would then visit local ███ like ███ to deliver or show the samples. This again contrasts with *Cray*, whose forum state-based employees did not store any inventory or conduct demonstrations in the state or serve any customers in the district. *Cray*, 871 F.3d at 1365.

### c. Similar facts to *RegenLab* are neutral in this case..

In *RegenLab*, the employer's reimbursement of its employees' "ordinary, reasonable, and necessary expenses" and mobile phones and vehicle use did not cut in favor of jurisdiction, as it did not appear that such reimbursements were conditioned on employees living in a certain area. 335 F. Supp. 3d at 552.

Here, Monolithic reimburses its employees' internet expenses. Like in *RegenLab*, this internet reimbursement does not cut in favor of jurisdiction because it does not appear that internet reimbursements were conditioned on Monolithic's employees living in Texas.

### d. Similar facts lead to the same conclusion as in *RegenLab*.

Importantly, no one factor in this analysis is determinative. *RegenLab*, 335 F. Supp. 3d at 552. But taken together, Bel Power has met its burden of establishing that Monolithic has ratified a regular and established place of business near Austin. Accordingly, the Court holds that venue as to Monolithic is proper in this district.

### IV.    BACKGROUND FOR MOTION TO TRANSFER

In the alternative, Monolithic argues that it would be far more convenient to litigate this case in California.

The asserted patents in this case cover various aspects of power supplies. Bel Power pleads induced, contributory, and direct infringement of the asserted patents. Three of the four inventors

named on the asserted patents reside in California. Mikhail Guz resides in the San Francisco area, which is subject to the subpoena power of courts in the Northern District of California. Dkt. No. 13-3. Dennis Roark resides in Agoura Hills near Los Angeles in southern California, about 300 miles from San Jose. Dkt. No. 13-4. Mahesh Thaker resides in San Diego in southern California. Dkt. No. 13-5.

Bel Power is a Delaware corporation with a place of business in Santa Clara, California. Bel Power has two relevant employees: Mr. Hodkinson and Mr. Jutras. Mr. Jutras resides in Massachusetts; Mr. Hodkinson lives in California.

Bel Power specifically accuses Monolithic of inducing or contributing to the infringement of ███ in this district. Bel Power argues that Monolithic's induced or contributory infringement involves the following entities in or near Austin, Texas: ████████████████████

████████████████████████████████████████

████████████████████

Monolithic has multiple U.S. regional headquarters in San Jose, California; Kirkland, Washington; and Detroit, Michigan; but not in this district. Dkt. 13 at 3. Monolithic has four employees here in this district: Jason Bone, Roberto Grullon, Sam Robinson, and Victor Gallagher. Mr. Bone performs technical testing and validation. Monolithic has about 2,600 employees worldwide, and about 200 of these employees are in San Jose, California.

Monolithic's declarant Katherine Hoang is a Director of Product Marketing. She declared that Monolithic "interacts and works with" ████ customers in California including ████████ ██████████████████████████████ Dkt. No. 33-1 ¶ 4. The Hoang Declaration does not describe the nature of this interaction and work. *Id.* The Court cannot find an explanation of the relevance of this work in the Hoang Deposition or in the second Hoang

Declaration.  Dkt. Nos. 30-6, 33-1, 33-7.  The evidence fails to show that Monolithic's work with ████████████████████████████████████ involves the accused products or has any relevance to this case.

Monolithic's declarant Liliane Wei is a Senior Director of Human Resources.  Ms. Wei declared that Monolithic has about 200 employees in its San Jose office as of 2021.  Dkt. No. 13-15 ¶ 7.  Ms. Wei does not identify how many of these 200 employees have any connection to the case or to the accused products. Dkt. No. 13-15.  Ms. Wei does not claim to have reviewed or otherwise learned the list of accused products or asserted patents, so she lacks the prerequisite knowledge for determining which of these 200 employees have information relevant to this case.

Monolithic's declarant and Senior Manager of Power Module Product Line, Yi Sun, reviewed the list of accused products, has knowledge of their operation, and declared that the accused products in this case were designed in either San Jose or China.  Dkt. No. 13-14 ¶¶ 3-5.  His declaration is silent about the distribution of evidence between San Jose and China and the quantity of it, but subsequent discovery revealed that most of the accused products were designed in China, not San Jose.  Dkt. 30-6 at 85:4-23.  Mr. Yi works in California.  Dkt. No. 13-14 ¶ 4.  Mr. Yi does not provide any further explanation about the quantity or locations of Monolithic employees who have any connection to the accused products in this case, nor does he identify the size of the team that he works with on the accused products.

In the absence of better evidence, the Court finds that only Yi Sun and a small number of other Monolithic employees in San Jose and China have knowledge or evidence related to the accused products in this case.  Monolithic is a large, worldwide company with many products.  Certainly not all of its 12,000 employees—or even all of its 200 San Jose employees—are dedicated to the handful of accused products in this case.

## V.    LEGAL STANDARD FOR MOTION TO TRANSFER

### A. Patent Venue

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action might have been brought in the transfer destination venue. *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the

10

application of foreign law." *Volkswagen I*, 371 F.3d at 203. Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on the conduct of a defendant after suit has been instituted. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 315. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id*. at 314–315. While "clearly more convenient" is not necessarily equivalent to the "clear and convincing" evidence standard, the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## VI.     ANALYSIS OF MOTION TO TRANSFER

### A.  The Northern District of California is a proper venue.

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue. Monolithic is a Delaware corporation with regional headquarters in San Jose, California, meaning this suit could have been filed in the Northern District of California.  Bel Power does not contest that this preliminary requirement is met.  Thus, the Court proceeds with its analysis of the private and public interest factors to determine if NDCA is clearly more convenient than WDTX.

**B. The private interest factors are neutral.**

    **a. The relative ease of access to sources of proof is neutral.**

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

Monolithic argues that under this factor, Courts look **only** to evidence of direct infringement and ignore evidence of indirect infringement. Monolithic's interpretation finds no support in the transfer analysis. The case relied on by Monolithic merely stands for the principle that the "**bulk** of the relevant evidence **usually** comes from the accused infringer," not that **all** of the relevant evidence **must always** come from **only** the accused infringer. *10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *2 (W.D. Tex. May 21, 2021) (emphasis added). Thus, the Court looks to the location of all evidence relevant to this case.

The evidence in this case, both physical and electronic, will likely come from three locations: the San Jose, California area, the Austin, Texas area, and China.

There is likely electronic and physical evidence in the San Jose area because Monolithic and Bel Power are both located there. Monolithic is the accused infringer. The Court credits Yi Sun's declaration that the accused products in this case were designed in either San Jose and China. Dkt. 13-14 ¶¶ 3–5. The Court also credits Katherine Hoang's testimony that "most" of the accused products were designed in China, not San Jose. Dkt. 30-6 at 85:3-23. Thus, only a minority of the design, testing, and engineering evidence is located at Monolithic's office in San Jose. Bel Power

is located in Santa Clara, which is in the greater San Jose area. As the plaintiff, Bel Power will likely have only a small amount of relevant evidence. This evidence near San Jose weighs in favor of transfer.

There is likely electronic and physical evidence of induced and contributory infringement in the Austin area. The allegations of indirect and contributory infringement play an important role in this case. Bel Power accuses ███ specific ███ customers of Monolithic in the Austin area including ██████████████████████████████████████ ████████████████████████████████████ Bel Power alleges that Monolithic's engineers and salesmen work with these ███ in the Austin area to achieve "design wins" (designing products) that result in infringement of the asserted patents. Dkt. No. 30-6 at 11:11–13:12, 70:2–20, 77:9–80:10, 97:11–16. Of these, the Court finds that ████████████ are unlikely to have evidence relevant to this case because they do not purchase power modules from Monolithic. *Id.* at 70:9–11, 70:18–20. The Court further removes ███ ████████████████████ from consideration because Monolithic works with these companies in both California and Texas, so their effect would be neutral. This leaves ███ ██████████████ as entities who work with Monolithic in Austin who likely have evidence of indirect or contributory infringement. This evidence near Austin weighs against transfer and cancels out the convenience of evidence in the San Jose area.

The Court considered the possibility that Monolithic's ████ customers in California, including ███████████████████████████████████ might have relevant evidence. Dkt. No. 33-1 ¶ 4. But Monolithic's witnesses only vaguely testified that Monolithic "interacts and works with" these customers. *Id.* There is no testimony before the Court indicating that any of these customers purchase the accused products. Dkt. No. 33-1; Dkt. No. 30-

13

6 at 70:2-20. Moreover, Bel Power has not identified these companies as a basis for its indirect infringement theory. The evidence before the Court is insufficient to show that ███████████ ███████████████████████████ will have any evidence relevant to this case.

Most of the evidence in this case will likely come from China. Katherine Hoang testified that "most" of the accused products were designed in China. Dkt. 30-6 at 85:3–23. Any evidence in China is on the other side of the world and will be about equally inconvenient to transfer to California and Texas.

Upon balancing the evidence in the San Jose area, the Austin area, and China, the Court finds the relative ease of access to sources of proof is neutral.

### b. The availability of compulsory process to secure the attendance of witnesses strongly weighs against transfer.

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Three named inventors reside in California, but only Mikhail Guz resides in northern California and is subject to the subpoena power of a court in the Northern District of California. The other two inventors, Dennis Roark and Mahesh Thaker, reside more than 300 miles away in

southern California, so no Court in the Northern District could compel Dennis Roark, Mahesh Thaker, *and* Mikhail Guz to attend trial. Thus, only the ability to compel Mikhail Guz to attend trial weighs in favor of transfer.

Bel Power argues that the ability to compel numerous third-party witnesses near Austin weighs against transfer, including █████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ Monolithic argues in response that these individuals are irrelevant to the case because they "at most shared meals" with Monolithic's employees. Dkt. 33 at 7. The Court finds that Monolithic's engineers met these ████ customer engineers for more than the sole purpose of sharing meals together. Based on their "engineer" job titles, on Hoang's testimony that ████ probably purchases power supplies from Monolithic, and on Monolithic's advertised need for field engineers with at least 5 years of experience in power supplies to work with customers in Austin, the Court finds that the individuals identified by Bel Power likely have relevant information related to the power supply technology at issue in this case. Dkt. No. 30-6 at 70:3-5; Dkt. No. 31-4.

The Court considered the possibility that Monolithic's ████ customers in California, including ████████████████████████████████████████ might have relevant witnesses to compel. Dkt. No. 33-1 ¶ 4. Monolithic's witnesses only vaguely testified that Monolithic "interacts and works with" these customers. *Id.* And there is no testimony before the Court indicating that any of these customers purchase the accused products. Dkt. No. 33-1;

15

Dkt. No. 30-6 at 70:2-20. There is also no corresponding advertisement showing that Monolithic hires engineers with years of power supply experience in California. Dkt. No. 31-4. Bel Power has not identified these companies as a basis for its indirect infringement theory, and Monolithic did not identify specific, relevant individuals from its California █████ customers in its brief. Without identifying individuals and their locations, Monolithic cannot show that anyone from these companies can be compelled to testify in the Northern District of California. The evidence before the Court is insufficient to show that █████████████████████████████████████ ████████ will have any witnesses relevant to this case that can be compelled to testify in the Northern District of California.

In conclusion, the ability to compel these 14 individuals near Austin strongly weighs against transfer and far outweighs the ability to compel Mikhail Guz in the Northern District of California.

### c. The cost of attendance and convenience for willing witnesses favors transfer.

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When analyzing this factor, the Court should consider all potential materials and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

This factor appropriately considers the cost of attendance of all willing witnesses including both party and non-party witnesses. *In re Pandora*, No. 2021-172, 2021 WL 4772805, at *2-3 (Fed. Cir. Oct. 13, 2021). "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-CV-00194-ADA, 2021 WL 2954095, at *6 (W.D. Tex. Feb. 2, 2021).

"When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct

16

relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). The Federal Circuit has stated that courts should not apply this 100-mile rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317).

"[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.* Time and distance frequently and naturally overlap because witnesses usually take more time to travel farther away, thereby increasing the time away from home.

Yi Sun has relevant information about Monolithic's products, works in San Jose, and will find travel within the Northern District of California to be more convenient. Mark Hodkinson has relevant information, resides in California, and will find travel to the Northern District of California to be more convenient.

Mark Jutras has relevant information and resides in Massachusetts. Dkt. No. 31-1. The Court finds this factor neutral as to Mr. Jutras because Bel Power does not argue otherwise. Dkt. No. 30 at 12.

Under this factor, Monolithic argues that the three non-party inventors it previously identified will require compelled attendance at trial, so this favor transfer. Dkt. 13 at 12. But Monolithic identified these witnesses as unwilling witnesses and makes no suggestion to the contrary. The Court thus disregards these third-party witnesses under this factor. Monolithic also improperly argues that it has four relevant marketing team members in California. The Court

strikes this argument, raised for the first time on reply after the close of venue discovery, because Monolithic's delay unfairly deprives Bel Power an opportunity to take discovery on these witnesses and deprives Bel Power a fair opportunity to otherwise respond. Dkt. 13 at 11-12; Dkt. 33 at 8.

Finally, neither party argues that the Monolithic witnesses in China will find either venue more convenient than the other.

In summary, two willing witnesses will find travel to the Northern District of California more convenient, so this factor favors transfer.

### d. All other practical problems that make trial of a case easy, expeditious, and inexpensive is neutral.

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

Monolithic argues that this factor favors transfer because venue is improper here. For the reasons explained in Section III above, the Court finds venue proper here. Thus, the Court finds this factor is neutral.

## C. The Public Interest Factors slightly weigh against transfer.

### a. Administrative difficulties flowing from Court congestion weigh against transfer.

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). The Court considers the "speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Both parties agree that the average time to trial in the Western District of Texas is faster than in the Northern District of California. The Federal Circuit has repeatedly stressed the importance of efficient, speedy litigation. *See, e.g., Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016) (acknowledging Congress's intent in the "quick" resolution of patent disputes). Thus, this factor weighs against transfer and is given due weight as only a single factor that does not outweigh multiple other factors.

### b. The local interest in having localized interests decided at home is neutral.

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). Accordingly, "the sale of an accused product offered

19

PUBLIC VERSION

nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit.*'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence in the district. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See Id.*

Katherine Hoang testified that "most" of the accused products were designed in China. Dkt. 30-6 at 85:3–23. Thus, Monolithic's headquarters there has the greatest local interest, but China's interest has no impact on a transfer analysis to the Northern District of California.

Monolithic has multiple U.S. regional headquarters in San Jose, California; Kirkland, Washington; and Detroit, Michigan; but not in this district. Dkt. 13 at 3. A minority of the accused products were designed at Monolithic's regional headquarters in San Jose. Dkt. 13-14 ¶¶ 3-5; Dkt. 30-6 at 85:3-23. Thus, the Northern District of California has a minor local interest.

The Western District of Texas also has a local interest in this case because Bel Power accuses Monolithic of indirect infringement by working with multiple third parties near Austin. For the reasons discussed in Section IV(B)(a) above, these entities include ███████████████

███████ Because Bel Power accuses Monolithic of working with these customers near Austin to design infringing products, this District has a local interest.

After balancing these considerations, the Court finds that the local interests cancel out and this factor as a whole is neutral.

### c. Familiarity of the forum with the law that will govern the case is neutral.

The parties agree this factor is neutral.

### d. Avoidance of unnecessary problems of conflict of laws or in the application of foreign law is neutral.

The parties agree this factor is neutral.

## D. Conclusion

In summary, most factors are neutral. This is a case where the majority of the accused products were developed in China—a fact that favors neither forum. The ability to compel fourteen specifically named third-party witnesses to attend trial in this District outweighs the ability to compel one inventor in the Northern District of California and the inconvenience of two willing witnesses who reside in California. The faster time to trial here further pushes down on a scale already tipped against transfer. Monolithic has failed to show that the Northern District of California is clearly more convenient for this case.

## IV. CONCLUSION

For the reasons stated above, Monolithic's Motion to Dismiss for Improper Venue is **DENIED**, and Monolithic's Motion to Transfer is **DENIED**.

SIGNED this 4th day of May, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE