**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| BEL POWER SOLUTIONS INC., | |
| *Plaintiff*, | Civil Action No. 6:21-cv-00655-ADA |
| v. | |
| MONOLITHIC POWER SYSTEMS, INC., | **FILED UNDER SEAL** |
| *Defendant*. | |

**BEL POWER SOLUTIONS INC.'S MOTION FOR SUMMARY JUDGMENT**
**ON MONOLITHIC POWER SYSTEMS, INC.'s MARKING DEFENSE**

## T<small>ABLE OF</small> C<small>ONTENTS</small>

Table of Authorities ....................................................................................................... ii

Statement of Issues to Be Decided By the Court ........................................................ 1

Introduction .................................................................................................................. 2

Statement of Undisputed Material Facts ..................................................................... 3

Legal Standard ............................................................................................................. 7

Argument ...................................................................................................................... 8

I.      MPS Has Failed to Satisfy Its Burden of Production to Produce Sufficient Evidence of Unmarked Products Practicing the Patents-in-Suit Sold in the United States ................ 9

      A.      MPS Failed to Timely Develop Its Marking Defense ........................................... 12

      B.      MPS's Evidence is Inadmissible ........................................................................... 13

      C.      MPS's Evidence is Insufficient ............................................................................. 14

II.     The Record Establishes that Bel Power Substantially Complied with the Marking Requirements of 35 U.S.C. § 287(a) ..................................................................... 17

Conclusion ................................................................................................................... 21

### TABLE OF AUTHORITIES

#### CASES

*Aldana v. Freescale Semiconductor, Inc.*,
  No. A-11-CA-614, 2012 WL 12957039 (W.D. Tex. Apr. 5, 2012) .........................................8

*Am. Constr. Indem. Co. v. Freeman*,
  2022 WL 315024 (W.D. Tex. Feb. 1, 2022)............................................................................7

*Anderson v. Liberty Lobby, Inc..*,
  477 U.S. 242 (1986)................................................................................................................7

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017)..................................................................................... *passim*

*Branca by Branca v. Sec. Ben. Life Ins. Co.*,
  773 F.2d 1158 (11th Cir. 1985) ............................................................................................14

*Celotex Corp. v. Catrett.*,
  477 U.S. 317 (1986)................................................................................................................7

*Contour IP Holding, LLC v. GoPro, Inc.*,
  No. 17-cv-4738, 2020 WL 5106845 (N.D. Cal. Aug. 31, 2020) ...............................................9

*CXT Sys., Inc. v. Academy, Ltd.*,
  No. 18-cv-171, 2020 WL 9936135 (E.D. Tex. Jan. 28, 2020) ................................................17

*Denneroll Holdings Pty Ltd. v. Chirodesign Grp. LLC*,
  No. 15-cv-740, 2016 WL 705207 (S.D. Tex. Feb. 23, 2016)..................................................19

*Duffy v. Leading Edge Prods.*,
  44 F.3d 308 (5th Cir. 1995) ............................................................................................7, 16

*Freeny v. Fossil Grp., Inc.*,
  No. 18-cv-00049, 2019 WL 8688587 (E.D. Tex. July 24, 2019) ....................................12, 13

*Forsyth v. Barr*,
  19 F.3d 1527 (5th Cir. 1994) ...............................................................................................7

*Funai Elec. Co. v. Daewoo Elec. Corp.*,
  616 F.3d 1357 (Fed. Cir. 2010).....................................................................................8, 18, 20

*Galeana v. Encompass Indemn. Co.*,
  No. SA-21-CA-460, 2022 WL 1518944 (W.D. Tex. Mar. 21, 2022)....................................14

*Global Traffic Techs LLC v. Morgan*,
  620 F. App'x 895 (Fed. Cir. 2015) ........................................................................................19

*Koninklijke Philips N.V. v. Zoll Med. Corp.*,
   257 F. Supp. 3d 159, 164-65 (D. Mass. 2017) ....................................................................18

*Mack v. Newton*,
   737 F.2d 1343 (5th Cir. 1984) .............................................................................................16

*Mass. Inst. of Tech. v. Abacus Software, Inc.*,
   No. 01-cv-344, 2004 WL 5268123 (E.D. Tex. Aug. 4, 2004) ................................................17

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996) ....................................................................................8, 18, 20

*Microsource LLC v. Eco World Grp, LLC*,
   No. 19-cv-04016, 2022 WL 545034 (N.D. Iowa Feb. 23, 2022) .......................................9, 16

*Milwaukee Elec. Tool Corp. v. Snap-on Inc.*,
   271 F. Supp. 3d 990 (E.D. Wis. Sept. 22, 2017) .......................................................18, 20, 21

*Pavo Sols. LLC v. Kingston Tech. Co.*,
   No. 14-cv-1352, 2019 WL 4390573 (C.D. Cal., June 26, 2019) ...........................10, 11, 15, 16

*Salazar v. HTC Corp.*,
   No. 16-cv-1096, 2018 WL 2041732 (E.D. Tex. May 1, 2018) ............................................8, 11

*Sealant Sys. Int'l, Inc. v. TEK Global S.R.L.*,
   No. 11-cv-00774, 2014 WL 1008183 (N.D. Cal. Mar. 7, 2014) ............................................10

*Tech. Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008) .............................................................................................11

*VLSI Tech. LLC v. Intel Corp.*,
   No. 21-cv-299, 2021 WL 2773013 (W.D. Tex. Apr. 12, 2021) .............................................11

*Walker v. SBC Servs., Inc.*,
   375 F. Supp. 2d 524 (N.D. Tex. 2005) ...................................................................................14

*Wilson v. Zapat Off-Shore Co.*,
   939 F.2d 260 (5th Cir. 1991) .................................................................................................13

*Zeiss A.G. v. Nikon Corp.*,
   No. 17-cv-07083, 2018 WL 5078256 (C.D. Cal. Oct. 4, 2018) .............................................17

## FEDERAL STATUTES

35 U.S.C. § 287 ..................................................................................................... *passim*

35 U.S.C. § 287(a) ............................................................................................... *passim*

## FEDERAL RULES

Fed. R. Civ. P. 56(a) ....................................................................................................7

Fed. R. Evid. 801 .......................................................................................................14

Fed. R. Evid. 801(d)(2) ..............................................................................................14

Fed. R. Evid. 803(6) ...................................................................................................14

Fed. R. Evid. 1006 .......................................................................................................6

## OTHER AUTHORITIES

21B Charles Alan Wright & Kenneth W. Graham, Jr.,
   Federal Practice & Procedure (2d ed. 2005) ........................................................11

Christopher B. Mueller & Laird C. Kirkpatrick, Evidence (1995) ...............................11

**STATEMENT OF ISSUES TO BE DECIDED BY THE COURT**

1. Whether Defendant Monolithic Power Systems, Inc. has failed to meet its burden of production to limit Bel Power's damages pursuant to 35 U.S.C § 287?

2. Whether Plaintiff Bel Power Solutions, Inc. is entitled to summary judgment in its favor that it substantially complied with the marking requirements of 35 U.S.C. § 287?

# INTRODUCTION

Plaintiff Bel Power Solutions Inc. ("Bel Power") should be granted summary judgment on: Defendant Monolithic Power Systems, Inc.'s ("MPS") "marking" defense, a theory set forth in its Sixth Affirmative Defense (the "Marking Defense"). Dkt. No. 54 ¶ 271. MPS has failed to satisfy its burden of production as to the essential elements of that defense: Its evidence cannot identify specific products that Bel Power or its licensees (1) sold in the United States, and which (2) embodied a claimed invention and (3) were unmarked. But even assuming MPS could clear this threshold, the defense still fails. There is no genuine factual dispute that Bel Power made reasonable efforts to ensure licensee compliance with the marking requirements. That means MPS has been on constructive notice as to the Patents-in-Suit since at least June 2015. Bel Power is entitled to seek pre-suit damages on its infringement claims from that date.

To meet its burden of production, MPS waited until the end of discovery to point to a single piece of purported evidence: a spreadsheet that appears to associate certain part numbers with two Bel Power licensees. MPS suggests this lone, belatedly identified spreadsheet is sufficient evidence for a jury to reasonably conclude that products listed in it satisfy every element of its burden—namely, that products were actually sold in the United States, actually practiced one of the Patents-in-Suit, and were actually unmarked. It comes nowhere close; indeed, it cannot satisfy MPS's burden of production for at least three independent reasons.

First, MPS waited until the last second to cite it. This prejudicial (and presumptively purposeful) delay meant Bel Power had no reasonable opportunity to investigate MPS's theory or the supposed products that it now relies upon. The spreadsheet and any factual contention based on it should not be considered. Second, the spreadsheet—again, MPS's sole evidence of purportedly unmarked products—is unreliable and inadmissible hearsay, so no jury could consider it at all. Finally, even if it were admissible, the spreadsheet does not reasonably support the defense.

2

Connecting this barebones spreadsheet to MPS's desired conclusion requires a chain of increasingly remote inferences that have no basis in the document itself. No reasonable juror could find it sufficient to substantiate MPS's Marking Defense without engaging in impermissible speculation. It is a house of cards—or rather, a house of inadmissible *card*. MPS's failure to carry its burden of production entitles Bel Power to summary judgment.

Setting aside the fatal infirmities of its only piece of purported evidence, MPS's Marking Defense would fail on the merits even if it could meet its burden of production. The evidence of record conclusively establishes that the vast majority of Bel Power's licensees properly marked all products practicing the Patents-in-Suit sold in the United States. No reasonable jury could conclude otherwise. Certainly, MPS's attempt to point to two licensees (one of which actually marked its products despite not having a contractual obligation to do so) and a handful of products is not enough to reasonably rebut Bel Power's evidence. Therefore, the evidence unequivocally shows that Bel Power substantially complied with the marking requirement of § 287(a) and Bel Power is entitled to judgment as a matter of law on MPS's Marking Defense.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

In or around April 2014, Bel Fuse, Inc., the parent company of Bel Power, entered into a business transaction to acquire Power-One Inc.'s power solutions segment of its business. Declaration of Christopher B. Ferenc ("Ferenc Decl."), Exh. A at 26-27; *see also* Ferenc Decl., Exhs. B-D. As part of that transaction, Bel Fuse acquired ███████████████████████ ████████████████████████████████████. Ferenc Decl., Exh. A at 26-27; Ferenc Decl., Exh. E. That ██████████ included the rights to ████████████████████████ ██████████████████, including the six Patents-in-Suit. Ferenc Decl., Exh. A at 26-27; Ferenc Decl., Exh. E. Bel Power is the owner of the Patents-in-Suit. Ferenc Decl., Exh. A at 26-27.

Since the issuance of the Patents-in-Suit, Bel Power (or its predecessor-in-interest) has granted ██ licenses to the patent portfolio, including to ████████████████████ ████████████. *See generally* ████████████████████. The vast majority of these licenses include explicit provisions requiring the licensee "██████████ ██████████████████████████████████ ██████████████████████████████████ ████████████████████ *E.g.*, Ferenc Decl., Exh. F at 4 ████████ 13 (██ ████), 22 (████████.), 63, 76████████, 82 ████████████ 103 ████████ ██, 114 ████████████, 123 ██████████████, 132 ██████████, 153 ██████████████, 174 ████████████, 185 ████████ ████████, 195 ██████████████████, 205 ████████████ ████, 215 ██████████████. All of the license agreements entered into after Bel Power acquired the patent portfolio included ████████████. Ferenc Decl., Exh. F at 13, 205, 215. The license agreements involving ████████████ and ████████████ are silent as to marking. Ferenc Decl., Exh. F at 92, 139.

On June 23, 2021, Bel Power filed the instant lawsuit for the infringement of the Patents-in-Suit. Dkt. No. 1. On May 18, 2022, MPS served an answer to Bel Power's complaint. Dkt. No. 54. In its answer, MPS asserted an affirmative defense that "Bel Power's claim for damages and costs, if any, against MPS for alleged infringement of the Asserted Patents are limited by," *inter alia*, 35 U.S.C. § 287. Dkt. No. 54 ¶ 271.

On May 23, 2022, Bel Power served an interrogatory on MPS, demanding that MPS "██████████████████████████████" for its Marking Defense. Ferenc Decl., Exh. G at 47. MPS's response, after objections, was an overbroad statement that ████████████



Ferenc Decl., Exh. G at 48. As there can be no dispute, MPS's response did not identify any specific products that MPS contended were unmarked. Ferenc Decl., Exh. G at 48.

The parties engaged in fact discovery over the next five months. Bel Power produced all of its licenses by September 16, 2022 and substantially completed its document production three weeks later on October 7, 2022. Ferenc Decl., at ¶ 7. The September 16, 2022 production also included a spreadsheet Bates-numbered BELPOWER_0009576. Ferenc Decl., at ¶ 9.

MPS waited until December 7, 2022 (two days before the then-scheduled end of fact discovery, *see* Dkt. No. 40[1]) to supplement its interrogatory response and claim that "████ ████████████████████████████████████████████████████████████████████████ ██████████████████████" Ferenc Decl., Exh. G at 49. In support of this assertion, MPS cited the spreadsheet labelled BELPOWER_00009576. Ferenc Decl., Exh. G at 49.

The spreadsheet cited by MPS appears to have been authored by ████████████ on ████ ████████████████████████████████████. ████████████████ The top of the spreadsheet reads "████████████████████" and indicates that the information within is "████████████████████." Ferenc Decl., Exh. H. The columns in the spreadsheet are labelled "████████████████████████████████████████." Ferenc Decl., Exh. H. The spreadsheet does not identify any license agreement, provide any sales information, or provide

---

[1] Discovery was subsequently extended to January 27, 2023. Dkt. No. 94.

any contact information for any of the purported ████████ The document does *not* show whether any listed product was ever sold in the United States, nor does it associate any specific listed item with any specific patent, much less any Patent-in-Suit. *See* Ferenc Decl., Exh. H. Furthermore, MPS did not produce any evidence showing that ██████████████ sold any product in the United States, if so, its volume, that the listed products practice any Asserted Claim, or that any sold product was actually not marked e.g. on the product or its packaging when sold. The untimely nature of MPS's contention left no opportunity for Bel Power to conduct any factual discovery into the document or related products.

On the other hand, Bel Power has produced substantial evidence of meeting any marking requirements. MPS served an interrogatory on Bel Power seeking information regarding Bel Power's "████████████████████████████████ ████████████." Ferenc Decl., Exh. A at 80. Bel Power responded that "█████ ████████████████████████████████████████ ████████████████████████████████████████ ████████" Ferenc Decl., Exh. A at 81. In support of those contentions, Bel Power identified nearly ███ documents pursuant to Federal Rule of Civil Procedure 33(d), including copies of ████████████████████, showing that Bel Power's licensees had indeed been marking their products. Ferenc Decl., Exh. A at 81-85. At least ████████ cited in Bel Power's interrogatory response included appropriate marking language. Ferenc Decl., Exh. K.[2] Bel Power's supplement identified an additional ████████. Ferenc Decl. Exh. A at 86. Bel Power further

---

[2] Due to the voluminous nature of the datasheets, Bel Power is submitting a chart summarizing the contents of those sheets. In accordance with Federal Rule of Evidence 1006, Bel Power has produced to MPS originals of all listed documents and is willing to produce the same to the Court, if the Court so requests.

explained that ███████████████████████████████████████████████

████████████████████████████ and that it "█████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████." Ferenc Decl.,

Exh. A at 86.

MPS has not, subsequently, supplemented or amended its discovery responses to provide

additional evidence to support its contentions, nor has MPS provided an expert opinion addressing

the issue of marking. The spreadsheet above is the only potential evidence that MPS has offered

in support of its Marking Defense.

## LEGAL STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard

provides that the mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be

no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Critically, "conclusory allegations unsupported by concrete and particular facts will not

prevent an award of summary judgment." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312

(5th Cir. 1995). "[U]nsubstantiated assertions, improbable inferences, and unsupported

speculation are not competent summary judgment evidence." *Am. Constr. Indem. Co. v. Freeman*,

No. 21-cv-00115, 2022 WL 315024, at *2 (W.D. Tex. Feb. 1, 2022) (citing *Forsyth v. Barr*, 19

F.3d 1527, 1533 (5th Cir. 1994)). Although the Court must, at the summary judgment stage,

resolve factual disputes in the non-movant's favor, "it need not credit . . . speculations,

unreasonable inferences, or unsupported conclusions." *Aldana v. Freescale Semiconductor, Inc.*, No. A-11-CA-614, 2012 WL 12957039, at *5 (W.D. Tex. Apr. 5, 2012).

## ARGUMENT

A patent owner is entitled to damages from the time when an infringer received either actual or constructive notice of the infringement. 35 U.S.C. § 287(a). A patent owner who makes or sells a patented product can notify infringers of its patent (i.e., provide constructive notice) by marking its products with a patent number. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017). Marking patented articles with "patent" or "pat.," along with the patent number or the address of an accessible webpage, is sufficient to meet the statutory requirement. 35 U.S.C. § 287(a).

The requirements of § 287(a) apply to both the patentee and those who make and sell patented articles under the patentee's authorization. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). However, "with third parties unrelated to the patentee, it is often more difficult for a patentee to ensure compliance with the marking provisions." *Id.* Courts accordingly employ a "rule of reason" approach to determine whether a patentee made "reasonable efforts to ensure compliance with the marking requirements." *Id.* This flexible approach is "consistent with the purpose of the constructive notice provision—to encourage patentees to mark their products in order to provide notice to the public of the existence of the patent and to prevent innocent infringement." *Funai Elec. Co. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1375 (Fed. Cir. 2010) (citing *Maxwell*, 86 F.3d at 1111-12).

To limit pre-suit damages pursuant to § 287, MPS bears an initial "burden of production" to "put [Bel Power] on notice that he or his authorized licensees sold specific unmarked products which [MPS] believes practice the patent." *Arctic Cat*, 876 F.3d at 1386; *accord Salazar v. HTC Corp.*, No. 16-cv-1096, 2018 WL 2041732, at *2 (E.D. Tex. May 1, 2018) (citing *Arctic Cat*, 876

F.3d at 1368). Failure by the alleged infringer to meet this burden "could lead to a large scale fishing expedition and gamesmanship." *Arctic Cat*, 876 F.3d at 1368; *see also Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-cv-4738, 2020 WL 5106845, at *6 (N.D. Cal. Aug. 31, 2020) ("The purpose of the initial burden is to prevent an 'unbounded' universe of products for which the patentee must plead and prove compliance with Section 287(a)."). If the alleged infringer fails to meet its burden of production, then there is no genuine dispute of fact and the patent owner is entitled to summary judgment. *See Microsource LLC v. Eco World Grp, LLC*, No. 19-cv-04016, 2022 WL 545034, at *44 (N.D. Iowa Feb. 23, 2022).

As set forth below, MPS has failed to carry its initial burden of production because it failed to timely identify any "specific unmarked product." MPS's Marking Defense is ultimately supported solely by conjecture gleaned from one document, which is inadmissible and unreliable. Even if considered, MPS has failed to support the numerous inferences that would be required to allow this Court to find MPS has put Bel Power on notice of specific products that: (i) practice a claim of one of the six Patents-in-Suit, (ii) was sold in the United States; and (iii) was unmarked. Accordingly, summary judgment in favor of Bel Power for MPS's Marking Defense is warranted.

Underscoring MPS's failure to meet its burden of production, there exists overwhelming record evidence to establish that Bel Power has substantially and continuously complied with the marking requirements for the Patents-in-Suit. Accordingly, regardless of whether MPS has satisfied its burden of production on its Marking Defense, Bel Power is entitled to summary judgment of marking compliance on the merits.

I.    **MPS Has Failed to Satisfy Its Burden of Production to Produce Sufficient Evidence of Unmarked Products Practicing the Patents-in-Suit Sold in the United States.**

Although the Federal Circuit has not articulated "the minimum showing needed to meet the initial burden of production," *Arctic Cat*, 876 F.3d at 1368, the details of the court's holding,

as well as its use of the well-defined term "burden of production," establishes that MPS's burden includes producing sufficient evidence to identify specific licensed products that were unmarked, which practice the Patents-in-Suit, and that were sold in the United States during the relevant period.

*Arctic Cat* addressed a split among district courts on the accused infringer's burden when claiming the patent holder's damages are limited by § 287. One line of cases, including *Sealant Systems International, Inc. v. TEK Global S.R.L.*, No. 11-cv-00774, 2014 WL 1008183, at *31 (N.D. Cal. Mar. 7, 2014), held that the accused infringer did not bear the burden of proof, but did bear the burden of production. *See Arctic Cat*, 876 F.3d at 1367.

The court in *Arctic Cat* concluded that the *Sealant Systems* line of cases was correct, describing *Sealant Systems* as "placing the initial burden on the alleged infringer to put the patentee 'on notice' of unmarked products and finding the alleged infringer failed to meet its burden because of conflicting expert testimony and failure to produce admissible evidence showing a patented product was sold." *Id.* Under that approach, the defendant in *Arctic Cat* satisfied its burden of production only because it identified fourteen specific products, presented undisputed evidence that these products had been sold by the plaintiff's licensee in the United States during the relevant period, and "presented an array of evidence" that these products practiced the asserted patents. *Id.* at 1366-68; *see also Pavo Sols. LLC v. Kingston Tech. Co.*, No. 14-cv-1352, 2019 WL 4390573, at *2 (C.D. Cal., June 26, 2019) ("*Arctic Cat* concluded that an infringer had met its burden of production, in part, by producing evidence showing that that licensed products were sold in the United States."). Similarly, this Court has found that an accused infringer satisfied its initial burden of production after it "point[ed] to [an] ITC decision that the 35XX chips practiced at least one claim of the '187 and '522 patents" and "identified the Sigmatel 35XX chips as unmarked by

producing a photograph of the chip and the 35XX datasheet, demonstrating that neither were marked with any patent numbers." *VLSI Tech. LLC v. Intel Corp.*, No. 21-cv-299, 2021 WL 2773013, at *3 (W.D. Tex. Apr. 12, 2021).

To be sure, the Federal Circuit stated that this initial burden is a "low bar." But that does not mean it is a toothless standard. The *Arctic Cat* court expressly identified a "burden of production," which carries with it a burden to come forward with admissible evidence. *See, e.g., Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) ("A quite different burden is that of going forward with evidence—sometimes referred to as the burden of production. . . . We understand, and we shall use here, the phrase 'going forward with evidence' to mean both producing additional evidence and presenting persuasive argument based on new evidence or evidence already of record, as the case may require.") (citing Christopher B. Mueller & Laird C. Kirkpatrick, Evidence §§ 3.1, 3.2 (1995)); 21B Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5122 (2d ed. 2005) ("Compared to the several weights of the burden of persuasion, the burden of production has only one; *the party must introduce sufficient evidence to support a jury finding in his behalf*." (emphasis added)). Thus, an accused infringer cannot meet its burden by merely mentioning an allegedly unmarked product at some point during litigation. Rather, the accused infringer must "produce *admissible evidence*" of "*specific products* that it believe should have been marked and were sold or offered for sale in the United States." *Pavo*, 2019 WL 4390573, at *3; *Salazar*, 2018 WL 2041732, at *2.

In this case, MPS does not contend that Bel Power sold or offered for sale any specific unmarked product. Instead, it claims that two licensees—██████████████████ ████████—purportedly sold products in the United States that did not comply with § 287. But the only evidence that MPS has identified in support of its Marking Defense is untimely,

inadmissible, and unreliable. Moreover, MPS's theory is built on unfounded inferences that the document it relies on does not support.

### A.    MPS Failed to Timely Develop Its Marking Defense.

Accused infringers, like MPS, are required to provide an initial identification of allegedly unmarked products that were sold in the United States in order to give the patentee a fair opportunity to investigate, pursue discovery, and, to the extent necessary, prepare expert reports in order to challenge an asserted defense raised under § 287. *See Arctic Cat*, 876 F.3d at 1368; *see also Freeny v. Fossil Grp., Inc.*, No. 18-cv-00049, 2019 WL 8688587, at *3 (E.D. Tex. July 24, 2019). *Freeny* is particularly instructive. There, the defendant delayed identifying specific products that it believed should have been marked until expert reports. 2019 WL 8688587 at *2-3. The court found it failed to satisfy its burden of production because the defendant's delay deprived the patentee of the ability to "develop[] the factual evidence and expert opinion needed to carry its burden of proof at trial"). *Id.* at *3. Here, MPS exhibits that same failure. MPS failed to identify a specific product or a single piece of "evidence" until the close of fact discovery, despite specific requests from Bel Power months earlier and despite having been in possession of the spreadsheet it relies on for over two months. This unquestionably deprived Bel Power of the ability to develop the factual record.

MPS was served in May 2022 with an interrogatory inquiring into any basis MPS had for asserting that Bel Power's damages should be limited under 35 U.S.C. § 287. Ferenc Decl., Exh. G at 47. MPS's initial response, on June 22, 2022, provided no real information, contending only that Bel Power's damages should be limited ███████████████████████████. *Id.* MPS certainly did not identify any specific products that it contended Bel Power or any licensee sold in the United States that were unmarked. Moreover, MPS received the spreadsheet that it now relies on September 16, 2022, but waited months to bring its contentions to Bel Power's attention.

Indeed, it was not until the very end of the fact discovery period—December 7, 2022—that MPS supplemented its response and raised the spreadsheet and the supposed ███████████ and ███████████ products. But MPS's disclosure is too little, too late.

By waiting until the very close of discovery to attempt to develop its Marking Defense, MPS deprived Bel Power of any opportunity to investigate what little information MPS or its relied-on spreadsheet provides. Thus, MPS's delaying tactics severely prejudiced Bel Power's ability to respond to MPS's Marking Defense. This Court should not countenance such trial by ambush. *Freeny*, 2019 WL at 8688587, at *3. MPS should be held to have failed to meet its burden of production because it failed to timely identify the basis of its contentions before the close of fact discovery.

**B.     MPS's Evidence is Inadmissible.**

In support of its Marking Defense, MPS points to a single spreadsheet produced by Bel Power to contend that certain products listed therein and purportedly associated with ███████ ███████ and ███████████ were not marked. But that spreadsheet is not admissible and, therefore, cannot satisfy MPS's burden of production.

The spreadsheet is not subject to a sworn affidavit or other testimony that establishes its admissibility. It was produced by Bel Power, but on its face plainly states that the information contained within is "███████████████████████████." Ferenc Decl., Exh. H. Moreover, it states that it was created in ███████ (before Bel Power acquired the Patents-in-Suit) by ███████ ███████ – an inventor on several patents but as an employee of Power-One, not Bel Power. Thus, the spreadsheet constitutes quintessential double hearsay: a statement by a non-party employee based on information from several other non-parties. *See Wilson v. Zapat Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) (explaining that double hearsay exists "when [a] record is prepared by an employee with information supplied by another person").

Moreover, the spreadsheet does not bear any indicia of reliability. It is not signed and is not identified as a corporate record of Bel Power. Nor does it include any legend or caption to explain the information contained therein. Significantly, MPS deposed ███████ but never asked him about the spreadsheet or its contents. Nor did MPS ever raise the document during depositions with Bel Power representatives to ascertain essential facts regarding how the information was obtained, whether the information was correct, or whether the products in fact practiced any of the Patents-in-Suit. Indeed, there is no basis from which Bel Power or the Court could conclude that the information in the spreadsheet is accurate. The rule against hearsay is intended to guard against the introduction of unreliable or untrustworthy evidence. *Branca by Branca v. Sec. Ben. Life Ins. Co.*, 773 F.2d 1158, 1161 (11th Cir. 1985). For that reason, it is well settled that hearsay is not competent summary judgment evidence. Fed. R. Evid. 801; *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 535 (N.D. Tex. 2005).

MPS cannot establish that an exception to the hearsay rule applies. *See Galeana v. Encompass Indemn. Co.*, No. SA-21-CA-460, 2022 WL 1518944, at *8 (W.D. Tex. Mar. 21, 2022) (burden is on the proponent of a piece of evidence to prove that an exception to the hearsay rule applies). The spreadsheet is not a party admission as it is not a statement made by Bel Power, nor is it a statement that Bel Power has adopted or believed to be true. *Cf.* Fed. R. Evid. 801(d)(2). Nor has MPS satisfied the criteria to show that the spreadsheet is a business record under Rule of Evidence 803(6) through, *e.g.*, an affidavit or sworn testimony. Accordingly, the spreadsheet cannot be considered reliable evidence to oppose summary judgment as to MPS's burden of production.

### C.    MPS's Evidence is Insufficient.

Even if the spreadsheet was admissible, it cannot bear the weight that MPS places on it. As noted above, to substantiate its Marking Defense, MPS was required to produce evidence

identifying (1) specific unmarked patented articles; (2) that MPS reasonably believes practice the Patents-in-Suit; and (3) that were sold or offered for sale in the United States. *Arctic Cat*, 876 F.3d at 1386; *Pavo*, 2019 WL 4390573, at *3. The spreadsheet does not include sufficient information that would allow any juror to draw the necessary inferences to support any of these points.

*First*, the spreadsheet does not include any information that would allow anyone to reasonably conclude that any of the products listed therein practice any one claim of the Patents-in-Suit. The spreadsheet reads ██████████████████ but fails to associate those products with any one license, let alone any one of the six Patents-in-Suit. Even if it is inferred that the spreadsheet references the licenses to ████████████ and ████████████, it would be unreasonable to further infer that each of the products listed in the spreadsheet practice any one claim of the Patents-in-Suit. Indeed, those licenses are to an ████████████████████████ ████████████████████████. *See* Ferenc Decl., Exh. F at 92, 99 ████████████████████); *id.* at 139, 148 (████████████████ ████████). Absent any such evidence, it would be unreasonable to conclude MPS has any basis to suggest any one product listed practices the claimed inventions of the Patents-in-Suit.

*Second*, the spreadsheet does not include any information suggesting that the items listed therein were actually unmarked. And, MPS did not introduce any evidence that these products were actually sold unmarked. MPS's argument for lack of marking for the products on the spreadsheet is not based on evidence but rather an inference that the products were not marked because the license to ████████████ and ████████████ do not include express marking provisions. *See* Ferenc Decl., Exh. G at 49.

But, that inference is counterfactual to the evidence of record here. Included in the spreadsheet are two ████████████ products: LTC3880 and LTC3883. *See* Ferenc Decl., Exh.

H. The datasheets for both of those products are properly marked. Ferenc Decl., Exhs. I at 1, 118 (LTC3880); Exh. J. at 1, 116 (LTC3883). MPS certainly cannot carry its burden of production by identifying *marked* products. *Microsource LLC*, 2022 WL 545034, at *44 (concluding that a party failed to meet its burden of production under *Arctic Cat* when it identified products that properly referred to the patent at issue). In light of this record, making an inference that any of the products are not marked without supporting evidence is a step too far. Put simply, it is unreasonable to assume that the lack of an express contractual obligation to mark means no marking occurred. *Duffy*, 44 F.3d at 312; *Mack v. Newton*, 737 F.2d 1343, 1351 (5th Cir. 1984) ("[A]n inference would be unreasonable if it would allow a jury to rest its verdict on mere speculation and conjecture.").

*Third*, the spreadsheet provides no evidence that any listed products were even offered for sale in the United States. There is no sales information, or contact information for a company, distributor, location, or person provided. Indeed, one of the columns appears to be in German ("██████████"), suggesting that these products may concern foreign licenses and/or products.[3] Notably, both the ████████████ and ████████████ licenses include rights to foreign patents with royalties paid on global sales. *See* Ferenc Decl., Exh. F at 323, 329 (████████████) 412, 419 (████████████████).

The fact that these products appear to be subject to some sort of license is not evidence of sales, particularly in the absence of any evidence that the products were subject to a license relevant to this case. *See, e.g.*, *Pavo*, 2019 WL 4390573, at *3 (defendant's burden of production under *Arctic Cat* not met where defendant "failed to meet its burden to produce admissible evidence that products licensed pursuant to the Licensing Agreement were sold or offered for sale in the United

---

[3] "██████████" translates from German to "██████████" in English.

States"); *Mass. Inst. of Tech. v. Abacus Software, Inc.*, No. 01-cv-344, 2004 WL 5268123, at *37 (E.D. Tex. Aug. 4, 2004) (17 licenses to practice the patent in suit "do not show that the Defendants are entitled to judgment as a matter of law that unmarked, patented articles have been sold in the United States"). Accordingly, any inference by MPS that the spreadsheet purports to identify unmarked products sold in the United States is unsubstantiated.

In sum, MPS's interpretation of the document is pure speculation. MPS may argue that *Arctic Cat* set the burden of production at a "low bar," and this excuses its deficient evidentiary showing. But "the bar is not non-existent." *SPEX Techs. v. Apricorn, Inc.*, No. 16-cv-7349, 2020 WL 1289546 (C.D. Cal. Jan. 21, 2020). To conclude otherwise would allow defendants to simply rattle off lists of products and foist onto patentees the burden of demonstrating that those products do not practice an asserted patent. This is exactly the type of "gamesmanship" that the Federal Circuit intended to avoid by putting the initial burden of production on accused infringers. *See Arctic Cat*, 876 F.3d at 1368. MPS failed to produce sufficient evidence to identify specific unmarked products that were sold or offered for sale in the United States. *See CXT Sys., Inc. v. Academy, Ltd.*, No. 18-cv-171, 2020 WL 9936135, at *4 (E.D. Tex. Jan. 28, 2020); *Zeiss A.G. v. Nikon Corp.*, No. 17-cv-07083, 2018 WL 5078256, at *3 (C.D. Cal. Oct. 4, 2018) (explaining that a marking defense fails where the defendant did not identify any unmarked products under three of the four patents in suit). Accordingly, MPS has not carried its burden of production and Bel Power is entitled to summary judgment on MPS's Marking Defense.

## II.     The Record Establishes that Bel Power Substantially Complied with the Marking Requirements of 35 U.S.C. § 287(a).

Even if MPS is deemed to have satisfied its initial burden, Bel Power is entitled to summary judgment as to MPS's Marking Defense because the record shows substantial compliance as a matter of law.

MPS does not contend that Bel Power sold or offered for sale any unmarked product. Instead, MPS's argument appears to be that two licensees— ███████████ and ███████ ███████—failed to mark *their* products in accordance with § 287(a). Accordingly, to defeat MPS's Marking Defense, Bel Power need only demonstrate that it took "reasonable efforts to ensure compliance with the marking requirements." *Maxwell*, 86 F.3d at 1111.

Significantly, substantial compliance may be found to satisfy the marking statute. *Id.*; *Funai Elec. Co.*, 616 F.3d at 1375. The Federal Circuit has found such substantial compliance where a patentee had taken efforts that resulted in as low as an 88% to 91% marking rate. *See Funai Elec. Co.*, 616 F.3d at 1375. Other courts have agreed. *See Milwaukee Elec. Tool Corp. v. Snap-on Inc.*, 271 F. Supp. 3d 990, 1020-22 (E.D. Wis. Sept. 22, 2017) (denying accused infringer's motion for summary judgment of no pre-suit damages where the patent owner presented evidence that its five licensees had marking requirements that would have resulted in an 89% marking compliance rate); *see also Koninklijke Philips N.V. v. Zoll Med. Corp.*, 257 F. Supp. 3d 159, 164-65 (D. Mass. 2017) (reasonable jury could conclude that marking 65% to 73% of products establishes substantial compliance). Here, even if MPS were deemed to have satisfied its burden of production (it has not), the record evidence establishes that Bel Power substantially and continuously complied with § 287(a)'s marking requirement.

Bel Power has an established practice and history of acting to have licensees mark patent-practicing products. As explained above, the majority of Bel Power's licensing agreements contain express provisions requiring ███████████████████████. Ferenc Decl., Exh. F at 4, 13, 22, 63, 76, 82, 103, 114, 123, 132, 153, 174, 185, 195, 205, 215. For example, most agreements explicitly require that the licensee "████████████████████████████████████ ███████████████████████████████████████████████████████████



.” *Id.* The licenses ensure notice is available to the public by explaining that ███████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ ” *Id.*

Moreover, the record establishes that Bel Power's (and its predecessor-in-interest's) licensees' products have been marked properly with the Patents-in-Suit. Exhibit K to the Declaration of Christopher Ferenc lists █ distinct datasheets (all of which have been produced to MPS) from ████████████████████████████████████. The chart identifies the product described in each datasheet, the date and revision of the datasheet, and relevant marking language that appears therein.

As the chart shows, a*ll* of these datasheets include appropriate language, identifying that the product included technology licensed from Bel Power (or its predecessor Power-One, Inc.) and that such technology was patented.[4] *See* Ferenc Decl., Exh. K. Indeed, the datasheets for several of the ████████████ and ██████ products that appear in the spreadsheet that MPS relies upon for its Marking Defense were properly marked. *See* Ferenc Decl., Exh. K at 5 (Nos. 41-42), 7 (Nos. 51-54).

Even licensees whose specific agreement did not include an express marking requirement have marked covered products. *Compare*, *e.g.*, Ferenc Decl., Exh. K at 7 (No. 59) (██████

---

[4] In this context, datasheets are the "██████████████████████████" Ferenc Decl., Exh. L at 201:6-9. Accordingly, individuals searching for information about a particular chip would be more likely to consult a datasheet than looking at the product itself. The datasheet therefore is more likely to provide constructive notice to the public and is an appropriate location to be marked. *See Global Traffic Techs LLC v. Morgan*, 620 F. App'x 895, 905 (Fed. Cir. 2015) (explaining that an important consideration in deciding whether markings on packages or elsewhere are appropriate is when the covered product is "installed out of the public view."); *Denneroll Holdings Pty Ltd. v. Chirodesign Grp. LLC*, No. 15-cv-740, 2016 WL 705207, at *8-9 (S.D. Tex. Feb. 23, 2016) (similar).

datasheet noting that the product is "█████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ ████████████") *with* Ferenc Decl., Exh. F at 160-69 (█████████████████████ ████████████). Tellingly, ████████████████████, one of the licensees about which MPS complains, has marked ███ distinct products as "███████" or "███████" under "██████████ ████████"—one of the Patents-in-Suit. Ferenc Decl., Exh. K at 1-2 (Nos. 1-28). In particular, two of the ███████████████ products that appear in MPS's touted spreadsheet include proper marking language in their datasheets. Ferenc Decl., Exh. I at 1, 118; Exh. J at 1, 116.

This near-100% level of compliance easily satisfies the threshold for substantial compliance with § 287(a). *See Maxwell*, 86 F.3d at 1111-12 (95% compliance with marking requirements established substantial compliance); *Funai Elec. Co.*, 616 F.3d at 1375 (88%–91% marking rate was sufficient to comply with Section 287(a)); *Milwaukee Elec. Tool Corp.*, 271 F. Supp. 3d at 1020-22 (denying an accused infringer's motion for summary judgment based on evidence of 89% compliance with marking).

In contrast, MPS has produced no evidence to suggest that Bel Power has failed to take reasonable efforts to mark covered products. As explained above, the only document it has raised concerning marking is unreliable hearsay that fails to establish any particular product sold in the United States practicing an invention of any of the Patents-in-Suit was unmarked. Its conclusory assertion that "██████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████," Ferenc Decl., Exh. G at 49, is insufficient to rebut the plethora of evidence presented by Bel Power that

establishes substantial compliance with the marking provision of § 287.[5] Accordingly, no reasonable jury could conclude that MPS was not on constructive notice of the Patents-in-Suit since at least June 2015 due to Bel Power's substantial and continuous efforts to ensure compliance with the marking requirements.

## CONCLUSION

For the foregoing reasons, Bel Power respectfully request the Court grant this motion and enter summary judgment in favor of Bel Power as to MPS's Sixth Affirmative Defense.

Dated: March 31, 2023                    Respectfully submitted,

*/s/ Christopher B. Ferenc*
Christopher B. Ferenc (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, N.W.
Suite 200
Washington, DC 20007
Telephone: (202) 625-3500
Facsimile: (202) 298-7570
christopher.ferenc@katten.com

Brian J. Sodikoff (*pro hac vice*)
Matthew H. Hartzler (*pro hac vice*)
Rachel J. Schaub (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Suite 1600
Chicago, IL 60661
Telephone: (312) 912-5200
Facsimile: (312) 902-1061
brian.sodikoff@katten.com
matthew.hartzler@katten.com
rachel.schaub@katten.com

---

[5] To the extent MPS contends that the ▮▮▮▮▮▮ products listed in the spreadsheet discussed above demonstrate Bel Power's failure to substantially comply with the marking requirement, such an argument fails. There is no evidence that *any* of the ▮▮▮▮▮▮ products practice one of the Patents-in-Suit, was unmarked, and were offered for sale in the United States. Even if all of that were true (it is not), the substantial compliance outlined above would "still suffice as 'substantially consistent and continuous' marking." *Milwaukee Elec. Tool Corp.*, 271 F. Supp. 3d at 1022.

Anthony M. Pettes (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
550 S. Tryon Street
Suite 2900
Charlotte, NC 28202
Telephone: (704) 444-2000
Facsimile: (704) 444-2050
anthony.pettes@katten.com

Melissa R. Smith
James Travis Underwood
GILLAM AND SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934−8450
Facsimile: (903) 934−9257
melissa@gillamsmithlaw.com
travis@gillamsmithlaw.com

*Attorneys for Plaintiff*
*Bel Power Solutions Inc.*

**CERTIFICATE OF SERVICE**

I certify that on March 31, 2023, the documents filed with the Clerk of Court via the Court's

CM/ECF system under seal in the above-captioned case were subsequently served on all counsel

of record by electronic mail.

/s/ Melissa R. Smith